McGEHEE vs. MATHIS, AS SHERIFF, ETC.

The provision of the act of 7th January, 1857, authorizing a special levee tax to be levied in Chicot county, which requires the lands to be assessed at not less than ten dollars per acre, is not in conflict with that clause of the constitution which says: " all property subject to taxation shall be taxed according to its value—that value to be ascertained in such manner as the General Assembly shall direct; making the same equal and uniform throughout the State"—this clause of the constitution applying to taxation for State purposes alone, as held in *Washington vs. The State*, (13 *Ark.* 752).

The term " taxes," as employed in *Section 9, Art.* 6, of the constitution, must be

construed to have reference to taxation for general county purposes, and not to special local assessments where the fund raised is expended for the improvement of the property taxed.

The levees provided for by the act of 7th January, 1857, are not " an internal improvement and local concern," within the meaning of *sec.* 9, *Art.* 6 of the constitution. Those terms as there employed, relate to public internal improvements and local concerns for general county purposes, and not to improvements for special local purposes, where the improvements are made by assessments on the property improved.

The power conferred upon the board of levee inspectors, " to adjust the assessment and levy" of the tax, " by hearing and deciding all questions " in relation thereto, did not constitute them a court. In the performance of their duties, the board of inspectors acted as ministerial and not as judicial officers.

That provision of the act of 7th January, 1857, which, after stating what the board of inspectors shall hear and determine, declares that " their decision thereupon shall be final," is to be understood in that sense which makes it final so far only as to conclude further investigation by the ministerial officers acting in the assessment and collection of the tax, and not to debar a party feeling himself aggrieved in the assessment of his land, from the privilege of prosecuting or defending his rights in the courts.

Swamp and overflowed lands purchased after the passage of the act of 11th January, 1857, repealing the 14th section of the act of 6th January, 1851, which exempted such lands from taxation for the term of ten years, with scrip which issued on levee contracts made prior to the passage of the repealing act, are not within the exemption.

*Appeal from Chicot Circuit Court in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

GARLAND & RANDOLPH, for the appellant.

It has been decided by this court that the law which exempted swamp lands from taxation, was a contract—was constitutional—and the after repeal of it by the legislature, was against the constitution; 19 *Ark.* 360. The period of exemption begins from the day of purchase. This is true evidently, but it does not touch this question. Under the law, a contractor could take pay in lands, drained and leveed, or in scrip worth so much, etc. This scrip was, by the law, stamped with certain characters and properties—assignability, etc. With its value

4

on its face, its negotiability, etc., at last, it was but land. By
the law itself, the scrip was issued that parties might buy and
enter lands with it. Now, it is not to be pretended that any
one took the scrip for itself, or for any inherent value in it; but,
ultimately, that it might be merged in land. We have seen
that this law was a contract, and whenever a party received ·
scrip for work done, etc., he was a party to this contract, and
was entitled to all its benefits. Where one does the work, and
receives scrip under this law—this contract—how can his rights
or those of his assignee, if he has any, be changed by any after
law? He has this right, then the instrument assigned, or *scrip
transferred*, carries its original legal abilities into as many
hands as it may chance to fall. Such is the well settled rule
as to all paper assignable—and it is too well settled to require
authorities at our hands; *Railey vs. Bacon*, 26 *Miss.* 451. This
scrip issued by the commissioners, by force of the law, carried
along with it the contract, that its fruits, or its results, should
not be taxed, as much so as the note bears interest, and entitles
its holder to demand and receive such interest. We think the
case fully as strong as the one on the question of interest. Any
act, or measure, which enlarges, abridges, or in any manner
changes the intention of the parties, resulting from the stipula-
tions in the contract, necessarily impairs it—any deviation
from its terms, by postponing or accelerating the period of per-
formance which it prescribes, imposing conditions not expressed
in the contract, or dispensing with the performance of those
expressed, however minute, or apparently immaterial in their
effect upon it, impairs its obligation. *2d Story Coms. on the
Constitution, p.* 236, *sec.* 1385, *notes* 2, 3. Tested by this rule,
the effort to tax lands entered with scrip issued before 11th Jan-
uary, 1855, is perfectly futile. In this case, it is the law that is
the contract. If we are right in our views on this point, accord-
ing to the decision in 19 *Ark. sup.*, all the lands entered with
that kind of scrip are exempt from any kind of taxation—
general, special, local, or any other, for ten years from purchase,
or until reclaimed; and the law taxing McGehee's lands for

levee purposes in Chicot county, until such times, is directly at war with the constitution, and is, therefore, void.

By *sec.* 15, *p.* 62, *Acts of* 1856-7, the board of levee inspectors is constituted a court, to hear and determine all questions relative to the assessing and taxing said lands, and to adjust the assessment list as it (the board) should think best, and whatever decision is made on such assessment, is to be final. We hold the legislature had no power under the constitution:

1st. To establish any such court.

2d. If the power exists, there is already a court, under the constitution, competent for all these purposes.

3d. That an inferior court, in this state, from whose decision there is no appeal, or whose decision is final, cannot be constitutionally established.

By this act the levee inspectors are required to apply certain facts and the law requiring lands to be taxed at certain prices, and on affidavits, etc., pronounce how much a certain person is indebted, for taxes, to the levee fund. This is the very essence of a judicial act. It is the rendering of a judgment, and cannot be termed a mere ministerial act; 3 *Bl. Coms.* 395, 396. Just as much a judgment in law, as the act of the County Court on the general assessment list is; *Randle vs. Williams ad.,* 18 *Ark.* 380; 19 *Ark.* 602.

By *art* 6, *sec.* 1, of our constitution, the whole judicial power was distributed, and there is no where any power given to organize a court of this kind.

Admit however, that this court might well have been established with powers and jurisdiction thus far, the making its decision final is directly repugnant to the very letter of the constitution. *secs.* 2, 5; *Art.* 6, *Cons.*

We think that by fixing the minimum price at $10 per acre on these land the legislature transcended its power very greatly; *Art.* 7, *sec.* 2, *of Constitution*, says all property subject to taxation shall be taxed according to its value—that value to be ascertained in such a manner as the legislature shall direct—making it equal and uniform throughout the state, etc. But it

does not give the legislature any right to say what value, more or less, shall be fixed. Uniformity in taxation is more strictly required in local or special taxes, than in general. *Marr vs. Enloe,* 1 *Yerg.* 452; *Slack vs. Maysville and Lexington Railroad Co.,* 13 *B. Monroe* 31; 9 *B. Monroe* 330, 341; *Trustees vs. Mc-Connell* 12 *Ill.* 138; *Smith vs. Corporation of Aberdeen,* 25 *Miss.* 458; *Hamilton vs. St. Louis County Court,* 15 *Mis.* 3.

S. H. HEMPSTEAD, for the appellee.

It is manifest that the vital, and indeed the only, question about which we need concern ourselves, is the validity of the act of the 7th of January, 1857, authorizing a special levee tax in Chicot county; for all the acts and proceedings under it are admitted to have been regular, and such indeed was really the fact.

And that question, as I humbly conceive, is *res judicata,* since this Court in the *State vs. County Court of Crittenden County,* 19 *Ark.* 375, held that the swamp and overflowed lands sold by the State, under the provisions of the act of 6th January, 1851, while the 14th section thereof was in force, were, by contract between the State and purchaser, exempt from taxation for ten years, unless sooner reclaimed, and that such exemption commenced *at the date of the purchase from the State.*

It is swamp and overflowed land that is exempted from taxation by the 14th section of the act of January 6th, 1851, and nothing else; and by that section no contract could spring into being, until the land had been purchased from the State. Until then there was nothing upon which the exemption could operate, and when we consider that exemptions of property from taxation are always to be construed strictly, this ought to be decisive of the question.

From the provisions of the Statute, it is plain that the contractor might do two things; first, take land in kind; or second, take land scrip, and locate the same, as the law then stood, upon any unselected swamp land in the State of Arkansas; yet it went no further than to say that whoever selected and took

OF THE STATE OF ARKANSAS. 45

Term, 1860.]        McGehee vs. Mathis, as Sheriff, etc.

up swamp lands while the 14th section was in force, should not be obliged to pay taxes on them for ten years from the date of entry. It did not say, because a contractor held scrip, that he might continue to hold it as long as he pleased, and finally locate it on swamp land, and then have the land exempted from taxation for ten years.

By the act of the 7th January, 1857, it was provided that there should be levied and collected in the county of Chicot, an annual levee tax on all alluvial lands in such county, that would be benefited by levees, and which are or shall be taxable for State revenue, the rate thereof to be fixed by the County Court for each year, commencing with 1857, at not less than one fourth of one per centum, nor more than one per centum upon the assessed value of said land; the assessment and valuation to be fixed by levee inspectors, whose election is provided for by the act; no land to be valued at less than ten dollars per acre; that each levee inspector shall be the sole judge, and embrace in his assessment list such lands only as would be benefited by levee work; and these assessments are to be returned to the clerk of the county, and the amount of levee tax on each tract is placed on the tax book, and the sheriff is required to collect the same, and pay it over to the treasurer of the board of inspectors, as a levee fund; and to be expended in making and repairing levees in the county, in the manner prescribed by the act.

These are the general features of the act, and which seems to have been carefully drawn and considered; and, although there are some parts of it, when separately viewed, which might seem to produce inequality, yet as a whole, the result of it appears to be the establishment of a just and equitable system, founded upon the great principle of taxation, that those who are benefited should bear the burden. It was intended to establish a general and permanent system of leveeing against the inundations of the Mississippi river, and tributary streams, and which could probably be more effectually done in that way than any other.

The power of the legislature, upon the subject of taxation, is sovereign, and only limited by the constitution, and the compact between this State and the United States.

Under the constitution, the County Court has exclusive jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the county, to be exercised in obedience to laws however passed by the legislature for the purpose of executing those powers. And it is, therefore, the right, and indeed the duty, of the legislature to provide and define, by law, county taxation; the amount, mode and manner of it, and the purposes to which the moneys raised from taxation may be applied; and this may be done by general or special acts. *County of Pulaski vs. Irwin,* 4 *Ark.* 473.

I am not aware, that by any fair construction of the constitution, the legislature would be prohibited from conferring upon any particular county, or number of counties, the power of raising revenue by taxation, for the purposes of internal improvement in the county, or to promote the local interests of the county, or for county purposes.

There is, for instance, a general law, authorizing the counties, respectively, wherein it shall be deemed expedient, to levy a tax for the erection of any public building, such as courthouses, jails, clerk's and recorder's offices, etc. *Gould's Dig.* 289. No one can doubt that it would be competent for the legislature, if there was no such general law, to authorize any particular county to levy a tax for such purposes; and because one county might need a court-house, or other public buildings, and require such a law, no one ever supposed it would be obnoxious to objection, because all counties were not taxed for a similar purpose. No one doubts, I suppose, that the legislature may lawfully authorize a single county, or any number of counties, to levy a road tax, as has been done in regard to many counties in this State. Or it might authorize the levying of a tax for

OF THE STATE OF ARKANSAS. 47

TERM, 1860.]      McGehee vs. Mathis, as Sheriff, etc.

any other county purpose, or object, and designate the mode and manner of assessment and collection.

Upon a careful consideration of the whole act, no reasonable doubt exists that it is constitutional; that the taxes for levee purposes may be legally collected, and their collection enforced in the manner prescribed by law. And if this be so, it follows that the decree in this case must be affirmed.

Mr. Justice COMPTON delivered the opinion of the Court.

This was a bill in chancery, brought by Edmund McGehee, the appellant, against Martin R. P. Mathis, as and in his capacity of sheriff and tax collector for the county of Chicot.

The bill alleges that the appellant, during the years 1855, 1856 and 1857, entered and located with scrip, which had been issued upon levy contracts, made prior to the 11th day of January, 1855, a large quantity of swamp lands, amounting in the aggregate to over ninety thousand acres, situate in Chicot county. That the lands having been entered with such scrip, were, under the 14th section of the act of the 5th January, 1851, exempt from all taxation whatever, for the space of ten years. That the 14th section of this act was repealed by the act of the 11th January, 1855, and the lands made subject to taxation for State and county purposes, as other taxable property. That by an act passed on the 7th of January, 1857, the State authorized a special levee tax to be levied in that county, under which no lands could be assessed at less than ten dollars per acre. That the levee tax on the lands of the appellant, under that law, amounted to the sum of $4,744 45 annually, and that the sheriff was proceeding to assess and collect the same. The prayer of the bill is, that the sheriff be restrained from collecting any taxes on said lands until after the lapse of ten years from the date of entry; that the act of January 11th, 1855, be declared void, as impairing the obligation of contracts, and that the special levee tax laid be declared unconstitutional and likewise void.

An injunction was granted in strict accordance with the prayer of the bill.

The appellee answered, averring that the lands in the bill mentioned, were subject to taxation, and had been regularly assessed under the levee act. He also, in his answer, specially insisted that there was no equity in the bill—that the court had no jurisdiction to restrain by injunction or decree, the collection of a tax levied under the authority of law, and that at the hearing, he would rely on these defences.

To expedite the cause, the following agreement, in writing, was entered into by counsel representing the parties, which was filed and became a part of the record in the cause, viz:

" 1. The lands mentioned in the bill, situate in Chicot county, are confirmed swamp lands, and were purchased by the complainant with scrip issued upon levee contracts made prior to the 11th January, 1855, but were actually purchased and entered after the passage of that act. They are what are known as alluvial lands, and are owned by McGehee, who is a non-resident, and a citizen of the State of Tennessee.

" 2. Under the act of the 11th of January, 1855, the said lands were furnished to the defendant, as assessor of Chicot county, by the auditor, in due form of law, and by such assessor regularly assessed for the year 1858, for State and county taxes, and those taxes being stricken out by the County Court, leaves only the levee tax as the subject matter of controversy.

" 3. Under the act of the 7th January, 1857, concerning levees in Chicot county, levee inspectors were elected, a levee board instituted, meetings held, the county divided into levee districts, the assessment list made out and returned, and passed on by the County Court, the valuation and tax fixed, as appears by the exhibits to the answer, and the levee tax book delivered to the defendant as sheriff, all in due time and according to that act. The levee tax thus assessed, being unpaid, publication and advertisement was made in strict accordance with that act, and the sale prevented by the injunction.

" 4. The steps taken and the proceedings had, have been in

accordance with said act; but the complainant insists that the act is unconstitutional and that said lands are not taxable for levee purposes, the defendant affirming that they are.

" 5. The levee tax assessed on said lands amounts to the sum named in the bill.

" 6. Replication to the answer, in short, and the cause to be heard by consent at the present term, on bill, answer, exhibits, replication and this agreement."

On the final hearing the injunction was dissolved, and the bill dismissed for want of equity.

In disposing of the several questions raised and argued, we will first consider the objections taken to the validity of the act of 7th January, 1857.

That act provides that the county of Chicot shall be laid off into levee districts.   That for each district there shall be elected one inspector, who shall reside therein, and that no person shall be entitled to vote in such election who does not reside on or cultivate alluvial lands in the county.

After providing for the qualification of the several inspectors, and their organization as a board, it is further enacted, in substance, by the 14th section of the act, that there shall be levied and collected in the county of Chicot, an annual levee tax on all alluvial lands in said county, that would be benefited by levees, and which are or shall be taxable for State revenue, the rate thereof to be fixed by the County Court for each year—commencing with 1857—at not less than one-fourth of one per centum upon the assessed value of said lands—provided that no lands so taxed, shall be valued at less than ten dollars per acre; that each levee inspector shall assess the lands in his district, and shall be the sole judge of what land would be benefited by levee work, and shall embrace in his assessment list only such as he shall deem of that description, and that they shall make out and certify under oath, their respective assessment lists, and make due return thereof.

By the 15th section of the act, it is made the duty of the Court upon the return of the assessment lists, to make an order

levying the tax, in which the amount per acre and time of payment are. to be designated, which order is to be published in the manner prescribed by the act, and on such publication being made, all the lands in said county subject to the tax, are to be considered as duly and legally assessed, and the tax duly levied thereon; and such order being recorded by the clerk of the Circuit Court, it is made his duty to attach a copy of the same to each tax list of the State and county revenue—made out annually—and to extend the said tax against all lands subject thereto, contained in such list, in a separate column, to be provided for that purpose.

Then comes the last clause of section 15, which is as follows:

" And said board of levee inspectors shall have power, and it is hereby made their duty, at their annual meeting in May, to adjust the assessment and levy of said tax, by hearing and deciding all questions relating to the improper assessment and location of any land, or the omission to assess and tax any legally taxable, under the provisions of this act, and make additions to or deductions from the taxes, as charged in such list, upon any land or against any person whatsoever, and such correction and deduction may be made upon the affidavit of the person applying therefor, stating the ground upon which it is claimed, or any other information or evidence, satisfactory to the board of inspectors, whose decision thereupon shall be final; such board shall make a list of all such corrections and deductions, and deliver the same to the clerk, who shall certify and attach a copy thereof to such tax list made out by him, whether the same shall have been previously delivered to the collector of the State and county taxes, or otherwise, and so reform such lists as to make them conform thereto, and the collector of the taxes shall collect," etc., etc.

The first objection relied on is, that so much of the act as requires the lands to be assessed at not less than ten dollars per acre, is in conflict with that clause of the constitution which says: " all property subject to taxation shall be taxed according to its value—that value to be ascertained in such manner as

the General Assembly shall direct; making the same equal and uniform throughout the State." In answer to this, it is sufficient to say that this clause of the constitution applies to taxation for State purposes, as held by this Court, on a careful review of its former decisions, in *Washington vs. The State*, 13 *Ark*. 752.

It is next insisted, that so much of the 15th section of the act as confers on the board of inspectors certain powers therein mentioned, conflicts with *section* 9, *Art.* 6 of the constitution, which declares that the County Court " shall have jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties."

The term " taxes," as employed in this clause of the constitution, must be construed to have reference to taxation for general county purposes, which is a common burden imposed for the common welfare, and not to special local assessments (as provided for by the act of 7th January, 1857,) where the fund raised is expended for the improvement of the property taxed. Legislative sanction of such assessment is ordinarily procured by the action of the parties interested; and that they are widely distinguishable from taxation for governmental purposes, is well established by the authorities.

In the *Egyptian Levee Co. vs. Hardin*, 27 *Missouri* 495, it appears that, for the purpose of reclaiming from liability to inundation a district of country between the Des Moines, Fox and Mississippi rivers, in Clark county, a company was chartered by the legislature of Missouri, authorized to construct levees and dig canals, and raise the fund necessary for such construction by a tax, not to exceed fifty cents per acre, upon the landholders in the district embraced within the charter. Each land-owner was allowed a vote, in the control of the work, for every forty acres of land he owned in the limits. The towns of Alexandria and Churchville, with their additions, were excepted from the operation of the charter, although within

the district of country embraced by it. Suit was brought to recover so ne of the assessments, and the defence was, that the act of the legislature was unconstitutional, because the land was taxed by the acre, and not in proportion to its value. The Court said: "that provision of our State constitution, which requires taxation to be proportioned to the value of the property on which it is laid, is only applicable to taxation in its usual, ordinary and received sense, and is therefore limited to taxation for general purposes alone, where the money raised by the tax goes into the State treasury, or the county treasury, or the general fund of some city or town, and is applicable to any purpose to which the legislative body of such State, county or town may choose to apply it; and is not intended to apply to local assessments, where the money raised is to be expended on the property taxed."

In *The matter of the Mayor of New York*, 11 *John.* 80, certain churches insisted that their lots were exempt from assessments for opening, enlarging, or otherwise improving streets in the city of New York, made pursuant to an act of the legislature passed in 1813. The Court said in that case: " These assessments are intended and directed to be made upon the owners of lands and lots who may receive ' benefit and advantage ' by the improvement. The exemption granted by the act of 1801, was in the general act for *the assessment and collection of taxes;* and the provisions of that act refer to general and public taxes to be assessed and collected for the benefit of the town, county, or State *at large*. The words of the exemption are, that no church or place of public worship, nor any school house ' should be taxed by any law of this State.' The word ' *taxes* ' means burdens, charges, or impositions, put or set upon persons or property for public uses, and this is the definition which Lord Coke gives to the word *talliage;* (2 *Inst.* 532,) and Lord Holt, in *Carth*. 438, gives the same definition, in substance, of the word " *tax:*" To pay for the opening of a street in a ratio to the benefit or advantage derived from it, is no *burden*. It is no talliage or tax within the meaning of the exemption."

In *Northern Liberties, etc. vs. St. John's Church*, 1 *Har.* 104, the same question arose, and the Supreme Court of Pennsylvania put the same construction on the word tax, and held that the church property, though exempt from taxation, under the general revenue law, was, nevertheless, subject to local assessments appropriated to the improvement of the property itself. The Court said: "Taxes are a public imposition, levied by authority of the government, for the purpose of carrying on the government in all its machinery and operations. They are imposed for a public purpose; whereas municipal charges are often for the benefit of lot holders on a particular street, and the assessment, as in this instance, induced by the request, made known according to the charter, of a majority of the inhabitants."

Mr. Justice MARTIN says, in the case of *The State vs. New Orleans Nav. Co.*, 11 *Mart.* 309, "These words (impost, tax or duty,) must be confined to the idea which they commonly and ordinarily present to the mind, exactions to fill the public coffers, for the payment of the debt, and the promotion of the general welfare of the country, not to a contribution provided to defray the expenses of building bridges, erecting cause-ways or removing obstructions in a water-course, to be paid by such individuals only who enjoy the advantages resulting from such labor and expense."

The Ordinance of 1787 declared that "all the navigable waters leading into the St. Lawrence and Mississippi, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the territory as the citizens of the United States or those of any other State that may be admitted into the confederacy, without any *impost*, tax or duty therefor." This provision was literally copied in the act of Congress of March 2, 1805, and it was held, in the case from which Judge Martin's remarks are quoted, that the charter of the New Orleans Navigation Company, which authorized a tax to be levied on vessels navigating the Mississippi for the purpose of raising a fund to be applied to the improvement of that navi-

gation, was not a tax or impost or duty, within the meaning of the act of Congress or the ordinance from which it was copied. The same principle was decided in *Crowley vs. Copley*, 2 *Louis. Ann.* 329. Under a law of that State, the owner of land on the Mississippi, was required to construct levees or embankments; and if the owner failed to construct or keep in repair, his portion of the levee, an officer, called the district inspector, had the levee built or repaired, and assessed the cost upon the land of the delinquent proprietor. This assessment was held not to be within the act of Congress, which exempted from State taxation all public lands of the United States for five years after they were sold under the direction of Congress.

These, and other authorities which might be cited, show the construction which our sister States, through the judiciary, have put upon the term " taxes," as employed in their constitution and revenue laws; and it is not reasonable to suppose that the framers of our constitution intended to use the term in a different sense in that instrument.

Nor are the levees provided for by the act of 7th January, 1857, an " internal improvement and local concern " within the meaning of that clause of the constitution last above stated. Those terms, as there employed, relate to public internal improvements and local concerns for general county purposes—which appertain to the county at large as a body politic—and not to improvements for special local purposes, where the funds expended in making the improvement, are raised by assessments imposed only on the particular property improved.

None of these constitutional provisions apply to the exercise of the taxing power of the government in the form provided for by the act under consideration; and it follows, as a consequence, that the power conferred on the board of levee inspectors, " to adjust the assessment and levy " of the tax " by hearing and deciding all questions " in relation thereto, was legitimately conferred — and, by conferring such power, the legislature did not constitute them a court, as seems to be sup-

posed in the argument.  There is, as has been seen, no consti-
tutional provision requiring such assessments to be made and
enforced through the instrumentality of a Court; and there is
nothing in the nature of taxation itself, in whatever form
exercised, which makes it indispensably necessary that the acts
of assessment and collection should be performed under the
sanction of a judicial tribunal.  *Parham vs. Decatur County*,
9 *Geo.* 352; *McCarroll vs. Weeks*, 2 *Tenn.* 213; 6 *Monroe* 643; 1
*Peters* 669.

The power of taxation and the mode and manner of exer-
cising the power, in the absence of constitutional restrictions,
belong to the legislature.  In the performance of their duties,
the board of inspectors acted, therefore, as ministerial and not
as judicial officers.

But it is objected that, by the 15th section of the act, the
decision of the board of inspectors, touching the matters con-
fided to their jurisdiction, is made final, and concludes all
further investigation as to the legality of the assessments—
which, it is contended, is unconstitutional.

If this were conceded, it would not destroy the validity of
the whole act, because it is well settled that one part of an act
may be unconstitutional and void, and other parts of the act,
not necessarily dependent on it, valid.  Hence, those provi-
sions of the act which authorize the assessment and collection
of the tax would remain unimpaired, because not obnoxious to
the objection; while so much of the act as denies the right to
test the legality of the assessment by judicial investigation,
would be declared void.  So that if this objection were well
taken, it would only secure to the appellant the right to impeach
the assessment for illegality — if any in it — notwithstanding
the decision of the inspectors.

The construction contended for, however, is not a sound one.
The act, after stating what the inspectors shall hear and decide,
provides that their " decision thereupon shall be final."  From
this we do not understand that the legislature intended to close
the door of the Courts against a party whose land had been

illegally assessed. Suppose the land of A is assessed when it is not liable to taxation, by reason of an exemption, or of its not lying in the alluvial district. He appears before the board of inspectors—raises the question, and it is decided against him. Was it the design of the legislature, in such a case, to deny A the right to apply to the Courts for relief? But suppose the land is sold for the taxes assessed, and the purchaser brings ejectment. Was it intended that A should be precluded from setting up the illegality of the assessment as a defence to the action? The power of the legislature so to enact has been gravely doubted. But whatever may be the power of the legislature, the moral injustice of such a law would be so monstrous, that such a construction should not be put on the statute in question, if, by a strict construction, confined to its very words, one more just and reasonable can be adopted. *Blackwell on Tax Titles, p. 102, 103, 104, and authorities there cited.*

True, the decision of the board of inspectors in the matters which they are authorized to hear and determine, is declared to be final. But this is to be understood in that sense which makes it final so far only as to conclude further investigation by the ministerial officers acting in the assessment and collection of the tax. The decision of the board is pronounced in a ministerial proceeding, and so far as regards its conclusiveness, must be understood to have reference to proceedings of that character—and not to judicial proceedings. It is no where expressly provided in the act, that a party, feeling himself aggrieved in the assessment of his land, shall be debarred the privilege to prosecute or defend his rights in the courts; and we will not extend, by implication, the operation of the act, and thus impute to the legislature the intention to exercise a power so arbitrary and unjust.

By express provision of the act of 7th of January, 1857, such lands only as are taxable for State revenue, are made subject to the special assessments provided for by that act; and this involves the further question, whether, under our revenue laws, the lands of the appellant are subject to taxation for State pur-

poses. He affirms that they are not, and relies for their exemption on the 14th section of an act of the legislature, passed on the 6th January, 1851, to provide for the reclamation of the swamp and overflowed lands of the State.

By this act the swamp land commissioners were required to let out the making of levees and drains by contract, at a stipulated price per cubic yard, to the lowest bidders; payment for which was to be made in the lands reclaimed, or the proceeds of the sales thereof, at the price previously fixed by the commissioners, and the contractor might, at his option, demand and receive in payment the land reclaimed in kind, or land scrip representing quarter section tracts—which scrip was transferable by assignment, and might be located on any portion of the unselected swamp and overflowed land. And when any contractor had selected land in payment for his work, or having received scrip, had located it upon unselected land, he was required to furnish the numbers to the commissioners, and, on their certificate, the Governor was directed to execute a deed to the contractor, or his assignee, in due form of law. *Secs.* 3, 4, 5, 6, *Swamp Land Laws, p.* 6.

The 14th section of the act is as follows:

" That to encourage, by all just means, the progress and completion of the reclamation, by offering inducements to purchasers and contractors to take up said lands, the swamp and overflowed land shall be exempt from taxation for the term of ten years, or until said lands are reclaimed."

By the act of the 11th of January, 1855, (*Acts* 1854, *p.* 127,) this section was repealed, and all swamp and overflowed lands, sold or located, made subject to taxation, as, under the revenue laws, other lands were.

It is insisted for the appellant, that, although his lands were not actually purchased until after the passage of the repealing act, yet, being purchased with scrip which issued on levee contracts made prior to the passage of that act, they were, by contract between him and the State, brought within the exemp-

5

tion provided for by the 14th section of the act of the 6th January, 1851. We do not think so. The 14th section of that act underwent discussion and was construed by this Court in *The State vs. County Court of Crittenden County*, 19 *Ark.* 360. In that case the Court held that the 14th section was, in legal effect, an offer, on the part of the State, to sell her swamp lands, in which she proposed, as an inducement to purchasers, to exempt them from taxation for ten years, or until they were reclaimed; that such of them as were sold under the provisions of the act, while the 14th section thereof was in force, were, by contract between the State and the purchaser, exempt from taxation; and that the period of exemption began at the date of the purchase from the State, and continued for ten years, if the lands were not sooner reclaimed, and if they were, ceased upon their reclamation; and in no event continued longer than ten years, whether reclaimed or not.

The Court did not decide that the 14th section of the act of 1851, was irrepealable, but did decide, that it could not be repealed so as to affect the exemption in favor of those who had purchased swamp lands prior to the passage of the repealing act, and in this was well warranted on principle and by authority. In the offer of the State, the exemption was held out as an inducement to purchasers and contractors to purchase, or, in the language of the act, " to take up " the *lands*, and not as an inducement to contractors to take *scrip*. Until the offer was accepted, or, in other words, until a purchase was made, there was no contract. Did the State not have the right to withdraw her offer? Was she bound to wait, in order that the holders of the scrip, after speculation had ceased to be desirable, might have an opportunity to secure the exemption? The State was under no obligation, legal or moral, to do so.

According to the plain provisions of the act of 1851, the contractor might take land in kind, or take land scrip. It was left to his choice to do either. Various considerations might, and doubtless in many instances did, influence the contractor

to take scrip instead of land in kind.  If he took land, it was to be at the price per acre previously fixed by the commissioners, and he was confined, in his selection, to such lands only as were reclaimed, however undesirable they might be: But if he took scrip, it could, as the law then was, be floated, and with it, the contractor could purchase unselected swamp land, lying any where within the limits of the swamp land grant, at the same price per acre, even though the land, thus purchased, should be intrinsically more valuable than those which had been reclaimed.  Again: The lands being wild and productive of no present income, the contractor might not be willing to invest the proceeds of his labor in them, and wait indefinitely for the fruits of the investment—whereas, the scrip being assignable, he could, by receiving and selling it, realize its then present cash value.  To take land in kind was one thing, and to take scrip was quite another.  If the contractor took land, he became a purchaser, and acquired the exemption.  But if he took scrip, he did not become a purchaser, and did not acquire the exemption.

To hold that the State, in the offer to sell her swamp lands, as expressed in the 14th section of the act of 1851, proposed, as an inducement to contractors to take *scrip*, that the lands which they might afterwards purchase with it, should be exempt from taxation, would not only do violence to a settled rule of construction—which is, that privileges and exemptions, granted by the State, shall be strictly construed, and that nothing shall be held to have passed except what is clearly and explicitly granted, (*State vs. County Court of Crittenden county, supra.*); but would also be at war with what seems to us to be the plain reading of the statute.

Leaving the question of jurisdiction an open one, we are of opinion that the appellant's bill was properly dismissed for want of equity.

Let the decree of the court below be affirmed with costs.

Absent, Mr. Justice RECTOR.