PAINE (RUDD v.). See Case No. 12.108.

PAINE (SIMON v.). See Case No. 12,873.

## Case No. 10,676.

### PAINE et al. v. WRIGHT et al.

[6 McLean, 395.] [1]

Circuit Court, D. Indiana. May Term, 1855.

JURISDICTION—CITIZENSHIP — RELIEF AGAINST ILLEGAL TAXATION — FOLLOWING STATE DECISIONS—TAX ON RAILROAD PROFITS.

1. Where a portion of the stockholders are citizens of other states. they may seek relief in the circuit court against an illegal taxation of their property by a state, although there be no allegation that the tax is in violation of the constitution or laws of the United States. And in such case, the corporation doing its business in the

[1] [Reported by Hon. John McLean, Circuit Justice.]

state, in order to obtain relief, may be made defendants.

2. The circuit court will give relief under the laws of the state, the same as the state court. And if the construction of the tax law has been fixed by the supreme court of the state, such decision will constitute a rule of decision for the circuit court.

[Cited in Stansell v. Levee Board of Miss. Dist. No. 1, 13 Fed. 851.]

3. A tax can be just and equal on railroad corporations only by taxing the profits.

4. The investments in such an enterprise are materially different from investments in real estate.

In equity.

Barbour, Porter & Yandis, for complainant.

Walpole, McDonald & Henderson, for defendants.

OPINION OF THE COURT. This bill is filed by a great number of persons represented to be citizens of other states than Indiana, and stockholders in the Indianapolis and Bellefontaine Railroad Company, to an amount exceeding sixteen thousand dollars, against the president and directors of said company, whose place of business is in the state of Indiana, and William Wright, treasurer of Marion county, in Indiana.

The controversy arises on the amount of taxes assessed on the stock or property of the railroad company. The secretary of the company returned, under oath the stock of the company, amounting to $335,367 90 in value, on which the legal tax was assessed by the auditor, and a duplicate made out for the taxes of 1853, which was handed to the treasurer of the proper county, and which tax the complainants allege was fully paid to the collector. The county auditor was directed, subsequently, by the auditor of state, to institute an inquiry whether a full return of stock, under the tax law of the state, had been made; and, on inquiry, the county auditor reported that instead of the value of the stock returned by the secretary of the company, which omitted the land owned by the company by a misapprehension of the law, he should have returned $799,000 in stock, &c., for taxation; and that the auditor decided there should be added to the sum returned $383,733, and that an additional tax on the sum omitted should be assessed, which added to the tax at first assessed, the sum of $2,533 19. The bill prayed that the treasurer might be enjoined from the collection of the above sum of $2,533 19, as an illegal assessment.

An objection to the jurisdiction of the court is made in the answer. The complainants are citizens of different states, none of them being citizens of Indiana, so that on that ground there would seem to be no just exception to the jurisdiction. The complainants sue as stockholders of the railroad; and they make the treasurer of Marion county, who collects the tax, defendant, and also the president and directors of the railroad company. No substantial objection is perceived to this form of suit. The stockholders own a large amount of stock, and they allege that an illegal tax has been imposed on the stock of the company, injurious to the stockholders, and on this ground they ask relief against the collector of the tax, and that he may be enjoined from collecting the same. It is true the railroad could not, in its corporate name, bring a suit in this court against the collector, because the business of the company is transacted in the state of which the defendant is a citizen. But the complainants, being citizens of other states, may claim the protection of their stock against an illegal taxation, and make the corporation a defendant, and enjoin it from paying over the tax; and the corporation being made a defendant, being a party on the record, the same relief may be given to it as if it had been made a complainant. This principle is exemplified in a case where a plaintiff, being a citizen of another state, sues in the federal court, making the person against whom the relief is prayed, and others, citizens of the same state, who are jointly interested in the relief prayed. The rule is, that the court having jurisdiction, relief may be given to the parties on the record, whether plaintiffs or defendants, as the principles of equity shall require. The corporation, however, should have answered, admitting the facts stated in the bill, and praying that equity may be done. This, however, under the view taken by the court, is not material.

This case is brought under the original jurisdiction of this court, on the ground that the controversy arises between citizens of different states. It does not come before us in the exercise of an appellate power, but as a court having concurrent jurisdiction with the state court, in giving effect to the laws of the state. And the question is, whether the tax law for 1853 requires the tax to be assessed upon the entire property of the railroad company, or upon what, in common language, constitutes the stock upon which dividends are paid. The 32d section of the tax law, 1 Rev. Stat. 113, makes it "the duty of the president, secretary, agent, or other proper accounting officer of every railroad, to furnish to the auditor of the county, where their principal office is situated, a list of all the stock in said company, and its value, attested by the oath of the officer making the same; and shall furnish a statement dividing the aggregate amount of all the stock of such company amongst the several counties in proportion to the value of the superstructure, buildings, and real estate of such company in each county; and if any such company shall not have in this state its principal office for the transaction of its financial business, it shall be the duty of the president, cashier, secretary, treasurer, engineer, or constructing agent of such company to furnish the auditor of the county, where the

work first enters the state, a statement, under the oath or affirmation of the officer making it, specifying the amount and value of all real estate owned by such company within this state, the amount expended in the construction of said work within the lines of the state, and the amount invested in machinery and rolling stock of every kind; which said machinery and rolling stock shall be assessed for taxation in the same proportion to its total amount, that the length of line of the work in this state completed, bears to the entire length of the line of said work completed." From the language of this section, there would seem to be no doubt that the legislature intended to tax the entire property of the railroad company; and that a list, to be furnished to the auditor of the county, "of all the stock in said company, and its value, attested by the oath of the officer making the same," was intended to include the whole property of the company. And this is the construction given to this section by the supreme court of Indiana, in Dunn v. Hamilton, Auditor of Marion County, in 1854. That decision of the supreme court of the state constitutes a rule of decision for this court. It has long been so settled in the federal courts. By the 37th section of the tax act, if the company shall fail to make a return of its property for taxation as required, "the proper county auditor shall proceed to make out such list from the best information he can obtain," &c. Now, if an imperfect list shall be made, the power here given will enable the auditor to act, by making out a new return, or correcting the errors of the one returned. This is within the purview of the above section.

Railroads have contributed more to the facilities of intercourse, the interest of agriculture, to build up towns and extend our internal commerce, than all other improvements. But, in the construction of these works, heavy expenditures have been incurred, and large debts contracted by way of loans of money and otherwise, so that the companies are ill able to bear the pressure of a heavy taxation. The expense of running the cars, making repairs, and meeting contingencies is very great; and when to this shall be added the interest on debts incurred, little or no profit can be realized to the stockholders for some years after the road is in operation. Lands, of necessity, are often received in payment of stock. These lands are taxed, the same as lands held by an individual, on the plausible ground that the lands of a corporation should be taxed the same as the lands of an individual. But these lands are never held by the corporation for the purposes of culture, but to be converted into money, or for the occupancy of the road. They do not, in general, as the lands of an agriculturalist, afford a profit by an increase of value. But

the corporation is taxed for the lands, and also for the structures made by borrowed capital. This, in effect, is a taxation on borrowed money, and is an addition to the interest.

In all enterprises intimately connected with the public interest, such as railroads, banks, &c., which require a large investment of capital, there is no mode of taxation so equal or just as a tax upon the profits. Such investments are subject to many contingencies which do not affect real estate. No estimate can show the expenditure required on a railroad, nor the losses of a bank. As common carriers, the railroad is responsible for injuries done to persons and property, through the neglect or want of skill in its agents; and experience has shown that juries are inclined most liberally to compensate all who suffer, by finding liberal, if not extravagant damages. Banks are liable to imposition and losses through the failures of borrowers, counterfeit notes and drafts, which no one can foretell. These casualties place at greater hazard the monies invested in railroads and banks than in real estate; and, although these establishments may be owned by individuals, yet they are so intimately connected with the public interest and welfare, that stockholders are distinguishable from the owners of other property. Taxation should be so laid on each classification of property, as to operate equally. Now, nothing can be more unequal than the above taxation of railroads. The cost of the work affords no criterion in regard to the profits. This depends upon location and other circumstances, which have no connection with the cost of construction; and yet all of them afford more or less public accommodation. These great improvements are made, generally, with the means afforded by capitalists of other states or countries, and we are enriched by the expenditure. These roads will not be kept in good repair, and be safe for passengers, unless the stockholders shall receive a reasonable interest for their advances. And this, and an entire equality of taxation, can only be attained by a charge on the profits. From indications not to be mistaken, these great lines are in danger of being embarrassed, if not destroyed, by taxation.

Believing that the tax in this case is not unconstitutional under the federal or state constitutions, and seeing that the tax law has been construed by the supreme court of Indiana against the right set up by the complainants, the bill is dismissed at the complainants' cost, and the injunction is dissolved.

PAINT, The J. G.　See Case No. 7,318.

PAINT, The JOHN G.　See Case No. 7,346.

PALESTINE, The.　See Case No. 2,563.