JAMES C. YEATMAN *v.* JAMES L. CRANDALL, Sheriff.

Article 127 of the Constitution of 1845, and 123 of the present Constitution, refer to State taxation in its proper sense, for general or State purposes When it says that taxation shall be equal and uniform *throughout the State*, it points directly to its object, which is to regulate the mode of filling the State Treasury. It does not take away the power of making local assessments for local improvements, upon the equitable principle that he who reaps the benefit must bear the burden.

The Act entitled "An Act forming a levee district, to be composed of the parishes of Carroll, Madison and Catahoula, for the better protection of the same from inundation," approved March 18, 1852, is constitutional.

That Act is not repealed, so as to exempt the plaintiff from paying the amount of his tax, by the Act "To reclaim and drain the swamp and overflowed lands donated to the State of Louisiana," &c., approved April 30, 1853.

APPEAL from the District Court, Tenth District, Parish of Madison, *Snyder*, J. *Hynes*, for plaintiff and appellant.  *Short & Parham* and *Caldwell*, for defendants.

SPOFFORD, J.*    The plaintiff seeks to enjoin the collection of a levee tax, on the ground that the statute authorizing it is unconstitutional, null and void.

The Act referred to is the "Act forming a levee district, to be composed of the parishes of Carroll, Madison and Catahoula, for the better protection of the same from inundation," approved March 18th, 1852, (Sess. Acts, p. 234,) amended March 25th, 1853, (Sess. Acts, p. 44), and repealed as to Catahoula April 28th, 1853, (Sess. Acts, p. 203.)

The 2d section of this Act provided "that for the purpose of building or making and repairing all levees in said levee district, an annual *ad valorem* tax of one-and-a-half per cent. on all the alluvial lands in the parish of Carroll, between the foot of the Bayou Mason hills and the Mississippi river, and all the alluvial lands in the parish of Madison except Diamond Island Bend, and all alluvial lands in the parish of Catahoula, be and the same hereby is levied; the value of said lands to be assessed by the assessment-rolls of each of said parishes."

This Act is said to impugn the rules laid down in Article 127 of the Constitution of 1845, corresponding to Article 123 of the present Constitution. " Taxation shall be equal and uniform throughout the State. After the year 1848 all property on which taxes may be levied in this State shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property shall be taxed higher than another species of property of equal value on which taxes shall be levied ; the Legislature shall have power to levy an income tax, and to tax all persons pursuing any occupation, trade or profession."

This Article refers to State taxation, in its proper sense, for general or State purposes.  When it says that taxation shall be equal and uniform *throughout the State*, it points directly to its object, which is to regulate the mode of filling the State Treasury.  It does not take away the power of making local assessments for local improvements, upon the equitable principle that he who reaps the benefit must bear the burden.  It does not say that the State shall build all the parish jails and court-houses, erect all the levees, drain all the swamps, open all the streets, fill up all the urban lots, and make the nameless other improvements which particular localities demand, and pay for the sum out of one common fund, levied *ad valorem* upon all the property in the State.

* BUCHANAN, J., took no part in this decision.

It is notorious that an acre of land pays twice as great a tax for local purposes in one parish as an acre of equal value pays in another parish. Yet no one thinks the Constitution infringed by such a state of things.

It is enough that State taxes for State purposes are equal and uniform and *ad valorem ;* for local improvements, each subdivision of the State may be required to pay in proportion to the cost or value of the improvements made for the benefit of the particular locality. Another interpretation of Article 127 would defeat its spirit and aim, by an application of its letter to matters which were not in the contemplation of its framers. It would be the height of inequality and injustice to make the prairies of Attakapas contribute *ad valorem* to the building of the levees of the Mississippi, without getting a contribution in return.

But this ground, which was mainly relied on in the printed argument of the appellant, was abandoned in the oral argument; and it was conceded that the Legislature might lawfully erect any portion of the State it saw fit into·a district for special local improvements, and assess the cost of such improvements upon that district alone. But it was urged that in such case the whole district so parcelled out should be subjected to the rule of equality and uniformity by which the Legislature is bound to exercise the taxing power.

An assessment for levee purposes is not a tax, in the strict legal sense of the term, although it is true the Legislature has called it so in the Act whose constitutionality is attacked. See *Crowley* v. *Copley,* 2 Ann. 330; *State* v. *New Orleans Navigation Company,* 11 M. 324 ; *Worsley* v. *Second Municipality of New Orleans,* 9 Rob. 333 ; *Lafayette* v. *Orphan Asylum,* 4 Ann. 2, and cases there cited.

But a principle of equity, which exists independent of any constitutional recognition, would dictate that the assessment should be made upon the land of each proprietor, as nearly as practicable, in proportion to the benefit received.

To secure an exact equality, in this as in everything else dependent upon human government, is impossible. Perfection in legislation is the dream of visionary minds.

If the Act before us is not clearly obnoxious to that equitable principle which was sought to be embodied in Article 127 of the Constitution, it is our duty to maintain it, in view of the immense practical benefit it confers upon the region of country which it protects from inundation.

The objections are, that the hill lands of Carroll and the whole of Diamond Island Bend in Madison, embracing about 60,000 acres of alluvial land, are not assessed for the special tax, although they are nominally within the levee district pointed out in the title of the Act.

The answer is, that they receive no benefit from the levees, because the laws of nature protect the hills from overflow ; and it is not yet necessary to protect Diamond Island Bend by a levee, which would have to extend fifteen miles along the bank of the Mississippi river, because only a few individuals live in the Bend, and they are employed in cutting cord-wood for steamboats.

We think the answer a satisfactory one. So far from violating the principle of equality, these exceptions were made to preserve it. The lands exempted get no benefit; they should not, then, bear any burden.

There are some minor objections urged in the brief, which seem to have been waived in the oral argument.

The fact that the Commissioners have neglected to obey an injunction of the

law requiring them to have the levee built and repaired, by preference, from the Bayou Mason hills to the Mississippi, would be relevant if a mandamus were sought to compel them to execute this provision; but it is not perceived what connection it has with the constitutionality of the Act.

The fact that certain alluvial lands in parishes back of this levee district have been incidentally benefited by the levees, without contributing to their erection, is but an illustration of the difficulty of equalizing such burdens exactly. When the law was passed the levels were not, it is presumed, precisely known; and this incidental advantage to remote lands may not have been foreseen or could not then be measured, even by an approximate calculation. Experience may dictate more satisfactory legislation in future; but the vague admissions upon the record as to this point do not authorize us to annul the law from which the plaintiff has derived a conceded benefit.

We do not find that the Act of March 18th, 1852, forming the levee district was repealed so as to exempt the plaintiff from paying the amount of his tax, by the Act of 30th April, 1853, to reclaim and drain the swamp and overflowed lands donated to the State of Louisiana by the Congress of the United States. (Sess. Acts 1853, p. 289.) See the same Act, as amended March 16th, 1854, § 10, (Sess. Acts, p. 94.) The supposed clashing of the two levee systems was guarded against by a provision in the Act of March 18th, 1852, section 26, which declared that "all levees which may be erected, in whole or in part, under this Act, and which may be selected by the State as a part of the *general* levee system, shall be paid for out of the proceeds arising from the sale of the swamp and overflowed lands, on the warrant of the President of the Board of said Commissioners—which sum of money, when received by said Board of Commissioners, shall be distributed *pro rata* amongst those persons who may have paid their taxes levied under this Act." (Acts 1852, p. 237.) The Act of March 18th, 1854, (Sess. Acts, p. 156,) was passed in pursuance of the same idea.

The appellant insists that, as he cannot be said to have abused the equitable remedy of injunction, the District Judge erred in condemning him to pay ten per cent. upon the amount enjoined, as damages.

As the amount enjoined bears no interest, we should be obliged to award eight per cent., and the difference is too trifling to furnish a reason for reversal of the judgment.

No amendment has been prayed for by the appellee.

The judgment is therefore affirmed, with costs.

VOORHIES, J., (concurring.) I have been led to reconsider the opinion to which I assented in the Benton street case and the case of *Cumming* v. *The Police Jury of Rapides.*

The doctrine of those cases, so far as it makes Article 123 of our present Constitution apply to special assessments for local improvements, like streets in the city, levees, &c., in the country, it seems to me will lead to the inequality which it was the object of that Article to prevent. I yield my former impressions on this point to those of a majority of the court, the more readily, because the Supreme Court which sat under the Constitution of 1845, and five of the seven judges with whom I have sat upon this bench, have concurred in holding that the Article in question was not intended to apply to municipal or local taxation for local improvements.

I concur in the judgment in this case.