STANSELL, Surviving Partner, etc., *v.* LEVEE BOARD OF MISS., DIST. No. 1.

*(District Court, N. D. Mississippi.  June Term, 1881.)*

1. POWER OF UNITED STATES COURT—STATE COURT.
    Where a remedy could be enforced by a state court, this court has power to adopt the same remedy in favor of a non-resident creditor who has obtained a decree against a resident defendant.
2. PRACTICE—PREVIOUS ORDER AFFIRMED.
    Upon an examination of this case it was *held* that the order of court previously granted should be affirmed, except in regard to taxes for 1880, which were inadvertently included therein.

HILL, D. J.   The questions now for decision arise upon the application of certain tax-payers of said levee district to set aside the order heretofore made providing for the collection of the back and uncollected taxes, to satisfy the decree heretofore obtained by complainant against said levee commissioners, for the building of the levees to prevent the overflow within said district. The questions presented are of unusual importance to both the complainant and tax-payers, and present unusual difficulties to my mind in arriving at a satisfactory conclusion as to the proper disposition of them; involving, as they do, the powers of this court to enforce its own decrees, and the power of the legislature of the state to defeat such enforce-

ment.   These questions have been most ably and exhaustively presented and argued by the distinguished counsel on both sides, and have received all the thought and consideration of which I have been capable, with the sole purpose of securing to the complainant his just and legal rights, and at the same time avoiding any interference with the just rights of the tax-payers, or the exercise of any powers not properly belonging to this court.   A brief statement of facts is necessary to a proper understanding of the questions presented.

The results of the war, among other things, broke down and destroyed the levees erected and maintained upon the Mississippi river front, which had, before that time, protected the territory embraced within levee district No. 1 from overflow.   In consequence of the overflows from the river, these lands were rapidly losing their value; to remedy which the owners of the lands within the district applied to the legislature of 1871 for an act creating and incorporating a board of levee commissioners, with power to rebuild and maintain the necessary levees for their protection.   The act was passed creating the board with all necessary powers.   To meet the costs and expenses of the enterprise, the following provision was made :

"And the lands embraced and included in said levee district shall be, and are hereby declared to be, and are, made chargeable and liable, as hereinafter declared, for all costs, outlays, charges, and expenses to be made or incurred for the levees, works, and improvements provided for and contemplated by this act, or in maintaining the same. That for the purpose of building, repairing, constructing, and maintaining the levees and works aforesaid, and for carrying into effect the objects and purposes of this act, a uniform charge and assessment of 2 per cent. per annum on the value of every acre of unimproved and improved lands and cultivated lands in said levee district is hereby fixed, levied, and made, which shall continue and be collected in each and every year for the period of 12 successive years from the date of this act, and shall be due and payable annually, on or before the first day of September in each and every year, for said period; and the valuation of every acre of unimproved lands so taxed is hereby fixed, for the purposes of this act, at $5, except Sunflower and Tallahatchie counties, which shall be $3; and every acre of improved and cultivated land at $30, except Sunflower and Tallahatchie counties, which shall be $20; and every acre which shall be improved and fenced, but not cultivated, at $15, except Sunflower and Tallahatchie counties, which shall be $10 per acre: provided, that as soon as such unimproved lands shall have been improved, and said uncultivated lands shall have been put in cultivation in any year, the same shall be valued, for the purposes of this act, at $30 per acre; the intention of this act, in its exercise of the taxing power, being that every acre of land cultivated in any year during the period of taxation shall be valued at the maximum assessment, and made

liable to taxation accordingly; and, in all assessments made, the lands described as cultivated shall be held as such, when a crop shall have been pitched thereon, or the same shall have been used in anywise for production, or for any other use, in the year for which the assessment shall have been made."

The foregoing provisions are contained in the eighth section of the act.

Section 10, among other things, provides "that said charges and assessments, by this act fixed and made as aforesaid on said lands, shall not be subject to repeal, alteration, or suspension during the time for which they are fixed, levied, and made, as aforesaid, until all the bonds, obligations, and liabilities of said board shall have been first paid and discharged."

To raise the necessary means for the purposes of the enterprise, the ninth section authorized the board to issue bonds, with interest coupons attached, to be sold or otherwise disposed of for the purposes of the act; the interest coupons and bonds, when due, to be receivable in payment of the taxes imposed. The act provides for the appointment of a tax collector, and defines his duties, and also the duties of other officers. The most important provisions, so far as they relate to the questions involved in this controversy, are found in section 10, and immediately follow the quotation above made from that section, and read as follows:

"And should any of said charges and assessments not be collected as herein provided, then the holder of any bond or obligation of said board, which may be due and unpaid, may apply to the judge of the circuit court or chancery court of any district included in the levee district for a *mandamus*, directed to said board, by which said board shall be ordered and compelled to proceed to have collected and paid over said charges and assessments as herein provided; or, instead of said *mandamus*, the said judges may, in their discretion, appoint one or more special commissioners, with authority to collect and pay over said charges and assessments, and for the collection of such charges and assessments the said commissioners so appointed shall have all the powers given by this act, and shall proceed in the same manner as by this act prescribed to the collectors of said board for the enforcement and collection of the same. And such commissioners, before they act, shall give bonds in proper penalties, with good and sufficient sureties, to be approved by said judge," etc.

The eleventh and twelfth sections of the act prescribe the manner in which the tax collector shall collect the taxes, and the mode of sales of the lands in case of non-payment, which shall be for cash. As a mode of classifying the lands as cultivated, fit for cultivation, and not cultivated, and as wild lands, the twenty-eighth section provides-

"That every tax-payer of each county, within the levee district herein defined, shall be and is hereby required to file with the levee tax collector of said county a statement under oath setting forth the number of acres of land which he owns or represents, and for which he is chargeable under this act; the number of acres cleared and uncleared, the number under fence, and the number under cultivation; that this statement shall be filed, as provided, on or before the first day of September in each year, beginning on the first day of August, 1871; that in case of failure so to file it, the party failing shall be held taxable to the extent of 25 per cent., in addition to the amount of taxes which he would have been otherwise liable for under this act; and that any error remaining in the assessment of the lands of the parties so failing in consequence of his failure or otherwise, shall not be held to affect in anywise their lands when conveyed under this act, by sale for non-payment of taxes."

The twenty-ninth section provides that the tax so imposed shall be held a tax *in rem,* and that upon failure to pay the same the lands shall be sold, and the sale shall vest a good title in the purchaser, subject to redemption, without further assessment.   These are all the provisions that need be quoted from this act to an understanding of the questions presented.

By an act of the legislature, approved April, 1876, the treasurer and auditor of the state were substituted for the former levee board, and the sheriff of each county for the levee tax collector; and it was further provided that the assessment of the lands for the year 1875 should remain until otherwise ordered by law, etc.   The concluding section of this act provides for the repeal of so much of the former act as conflicts with its provisions.

Complainant, with one Partee, now deceased, as copartners, contracted to rebuild certain portions of these levees at certain specified rates, and agreed to receive in payment the bonds of the levee board. They proceeded to rebuild the levees, and to receive the bonds in payment, but upon final settlement a disagreement arose as to the sum due, and the board refused to deliver any more bonds.   The result was a suit on the equity side of this court, and a decree in favor of complainant, as surviving partner, against the present levee commissioners, for the sum of $71,623.67, rendered on the nineteenth day of June, 1879.   Upon this decree an execution was issued and returned by the marshal *nulla bona.*   Whereupon complainant applied for and obtained an order providing for the collection of the alleged unpaid taxes imposed by the act of 1871, and of this order complaint is now made.

From the foregoing statements it is apparent that the levee scheme so provided was at the instance and for the benefit of the tax-payers,

in order to protect and enhance the value of their lands embraced within the levee district. The board and the commissioners were only their agents to make and carry out their contracts. The scheme received the proper legislative sanction, and the whole proceeding was valid under the rulings of the highest judicial tribunal of the state. See *Williams* v. *Cammack*, 27 Miss. 209, and *Alcorn* v. *Hamer*, 38 Miss. 752. It is true that many of the lands may have changed owners since this scheme was entered into, and since the levees were rebuilt, but they were taken *cum onere*, and, whether held by the original owners or subsequent purchasers, they are alike enjoying the protection and enhanced value resulting from the labor and outlay of Partee and Stansell, and for which every principle of justice and equity demands that they shall be compensated, if it can be done under the legitimate powers of this court. The contract of Partee and Stansell was entered into with the board, the agents of the tax-payers, with the charge upon the lands valued and classified as stated, and the mode for ascertaining the quantity embraced within the different classes, in each and every year during the period stated, fixed and specified. At the time the act was passed, and the contract entered into, it was doubtless expected that the area to be put in cultivation would, as a consequence of improvement, be greatly enlarged from year to year, and thus increase the amount of taxes to be collected, and the means of payment of the bonds to be issued, and which it was contracted would be received in payment for the work, but which the board, the agent of the tax-payers, refused to deliver after the work was done, and thereby compelled complainant to take a money decree for their estimated value, which it is now insisted, although greatly reduced in amount, is subordinate to and payable in the bonds and coupons. The tax-payers, the contractors, are certainly estopped from setting up this distinction between the bonds and complainant's decree, so that this question will not be further considered. The act of 1871, which must be held in all its substantial bearings to be the basis of and constitute a part of the contract between Partee and Stansell and the board, provided that if the taxes and charges were not paid as provided by the act, then the holder of any bond or obligation of said board, which might be due and unpaid, might apply to a judge or chancellor for the summary proceedings provided for their collection and payment. The fair construction of this provision is that the sum collected should be paid to such claimant, and this provision became as much a part of the contract as any other; and all the provisions of the act, so far as the rights of the

creditors were concerned, were by the act itself declared to be irre-pealable, and had it not contained that declaration the constitution of the United States and of this state would have made that impress upon it.

This brings us to consider the effect of the act of 1876, upon which petitioners mainly rely in support of their motion to set aside the order complained of. This act substitutes the present levee commis-sioners for the former board, and the sheriffs of the different counties for the former collectors. To this there is no objection, as neither change interferes with the substantial rights of the complainant, or any other creditor. But so far as it attempts to exonerate the tax-payers from giving in from year to year the quantity of improved and cultivated land, and consequently from the payment of the increased taxes upon it, and also from the summary remedy for the payment of the back and unpaid taxes, if such was the intention, it must be held as violating and impairing the contract, and, under the constitu-tion, null and void. But a fair construction of the act does not justify the conclusion that it was so intended. It does not do so in terms, and we are not to presume that the legislature intended to pass an act violative of the constitution. The above conclusions are sustained by the case of *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, and au-thorities referred to in that case, and by other decisions made by the same court since that time, and especially the recent case of *Meri-wether* v. *Garrett*, 102 U. S. 472. This brings us to consider the question of power in this court to enforce this summary remedy.

The order of the court does not undertake to levy the tax, or to change it. The levy was made by the legislature in the act of incor-poration, and it was further provided that it should not be repealed until all the charges and obligations were paid and discharged. The same legislative act gave any holder of a past-due obligation upon the fund made a charge upon the lands embraced within the levy district, this summary remedy for its collection. That this remedy could be enforced by the judges and officers of the state mentioned is not de-nied. Such being the case, this court has the power to adopt the same remedies in favor of a non-resident creditor who has obtained a decree against a resident defendant. This position is sustained by the following cases: *Ex parte Biddle*, 2 Mason, 472; 2 McLean, 556; 6 McLean, 395; 13 Pet. 195; 2 Dill. 598; 92 U. S. 20; and espe-cially *Sup'rs* v. *Rogers*, 7 Wall. 175, and the case of *Meriwether* v. *Garrett*, above referrred to. The order follows the directions of the act of the legislature, except that it is made by this court, or

the judge in vacation, (the objection on account of its not being made in term time is not insisted on;) and that in the case of the collector in Tunica county, upon the refusal of the sheriff to collect the tax, the marshal'was appointed in his stead.   This was authorized by the rule announced by the supreme court in the case of *Sup'rs* v. *Rogers,* above referred to, and is not in conflict with the ruling in the case of *Meriwether* v. *Garrett* so much relied upon by counsel for the tax-payers.   This brings us to consider the. objection to that portion of the order which requires a portion of these delinquent taxes to be paid in cash, and is the one to which objection is mainly urged.   Neither this nor any court has power to require the regular payment of taxes as required by the law, within the time limited, in any other than past-due bonds and coupons.   Indeed, the act of 1876, in requiring such tax payments to be made to the extent of 2 per cent. in cash, was in conflict with the constitution, and not binding upon the tax-payer who paid his taxes within the time prescribed by law.   The taxes required to be collected by the order do not belong to this class, but belong to the class forfeited to the creditor who may see proper to pursue them, in consequence of the failure of the owner of the land to return them and pay the taxes within the prescribed period, and who by his neglect has forfeited his right to pay in bonds and coupons.   The order permitting 35 per cent. to be paid in bonds and coupons is a concession to the tax-payer.

When sales are made, the act requires that payment shall be made in cash.   This is the result of a failure to pay within the prescribed time.   There is no difference in the owner's permitting his land to be sold for cash, and paying himself in cash, after he has neglected to return his lists, and pay within the required time.     It is said in argument that the owner may redeem, or rather repurchase, and pay in bonds and coupons, and therefore the back taxes may be paid in the same way.   This is an argument the other way, as it required special provision for such payment.  But the parties stand on a different footing in the case of redemption.   The board of commissioners are but redeeming their own promise.   In the case of the creditor, and especially the complainant, who has been compelled to take the reduced value of that which had been promised, it is claiming only that which nas long been due him.   The tax-payer who, either by negligence or fraud, has so long delayed discharging the charge upon his land, has no just ground of complaint because he is required to pay in cash the sum demanded.   It is insisted that it is inequitable to require payment in cash, as the tax-payers relied upon the act of 1876, but at the

same time it is said that there is less land now in cultivation than then. If so, the order relieves rather than oppresses the tax-payer.

It is also claimed that the assessment and payment of taxes made, though erroneous, is conclusive; that the action of the officers in such assessment and collection exhausted all the powers on the subject. This point is particularly pressed by the able and distinguished jurist and lawyer who made the closing argument for the tax-payers,—a gentleman for whose opinions I entertain the highest regard on all questions, but especially upon questions of law, to which profession he has devoted more than half a century. There is, however, one provision of the act of 1871 which has escaped the learned jurist's attention, and that is, that for a failure to make the required return the delinquent shall be charged a penalty of 25 per cent. on the amount of his taxes. If it be true, as contended, that the return made is conclusive, and that the tax collector had no power to add to the assessment roll that which had been omitted, there was no power to add this penalty. The act certainly intended that the collector should ascertain the whole quantity omitted, according to the classification, and then add the penalty; and I am satisfied that this was the case, whether the whole or only a part was omitted according to the classification.

The returns made by the tax-payers are to be considered *prima facie* correct. It is to be only so considered, and on behalf of a creditor, for either fraud or mistake, is subject to correction, whether the mistake be in favor of or against the tax-payer. It would be unjust to make the correction against the tax-payer, and in case of mistake not allow him the benefit of the correction. The correction, under the order complained of, is first submitted to the tax-payer himself. I take it that there have been but few cases in which his return has been disputed, and, when such has been the case, the order provides a cheap and easy mode for settling the dispute, so that there is no just ground for complaint on this subject. Lastly, the statutes of limitation of three and six years are invoked on behalf of the tax-payers. To this the answer is that the acts of the legislature provide no limitation, and the court cannot supply one. It is not seriously contended that the limitation of three years could be made to apply. If by analogy the limitation of six years could be invoked, it would stop at the filing of the petition, and would include all unpaid taxes since the seventh day of February, 1874. The order does not embrace any taxes due after the first day of January, 1880.

After a careful consideration of the questions involved, aided by the authorities referred to, and the able arguments of counsel on both sides, I am brought to the conclusion that the order made on the seventh day of February, 1880, was authorized by law, and the practice prevailing in such cases in the state and federal courts, and is not violative of the just rights of the tax-payers. Therefore, the petitions and motions made on behalf of these tax-payers will be dismissed, and the costs of this proceeding paid, as the other costs of the cause, out of the taxes collected.

### DECREE.

The petition of D. M. Russell, W. H. Stovall, and H. P. Reid, for themselves, as tax-payers of the county of Coahoma and state of Mississippi, and on behalf of all other tax-payers of said county; and the petition of Archibald Wright, Thomas W. Allen, and W. C. Folkes, and other tax-payers of the county of Tunica, in the said state; and the petition of A. M. Clayton, a tax-payer of Tunica county, aforesaid, praying to be relieved against an order made in the above-entitled cause by the judge of this court at chambers, on the seventh day of February, A. D. 1880, coming on to be heard, and the same having been fully argued by counsel, and maturely considered by the court, and it now, at this time, in open court, appearing to the satisfaction of the court that the petitioners are not entitled to be relieved touching any of the matters in the said petitions contained, except in regard to the taxes of the year 1880, accruing after the first day of January, 1880, which were inadvertently embraced in the said order: It is therefore ordered, adjudged, and decreed that the prayers of the said several petitions, except as to the said taxes of the year 1880, be denied, and that the said petitions be dismissed; and that the said order, made February 7, 1880, be amended by striking out the words "including the tax of the current year" wherever the same occur.

And it is further ordered, adjudged, and decreed that the costs of the said petitions be paid out of the taxes collected under and by virtue of the said order.

And inasmuch as it has been questioned whether the said order made on the seventh day of February, 1880, and another order made in the said cause, at chambers, on the fourth day of November, 1880, in relation to the collection of the taxes in the county of Tunica, ought not regularly to have been made in open court in term time,

and not at chambers, therefore, in order to obviate any question of that kind,—

It is further ordered, adjudged, and decreed that the said two orders so made at chambers bo approved, adopted, ratified, and confirmed, except as aforesaid, as the acts of the court, in the same manner as if the same had been originally made and passed in open court on the days of their respective dates; and all acts done in pursuance of said orders shall have the same effect as if done in pursuance of orders regularly made in open court and recorded in the minutes.

And it appearing to the court, on the construction of the acts of 1871 and 1876, that the sales of land for the said levee taxes are required to be made at the same time as sales of land for state and county taxes—

It is further decreed that sales of land under the said orders shall be made at the times and places appointed by law for sales of land for payment of the state and county taxes.

And it is further ordered that the 7 per cent. on taxes collected, allowed by said order to the assessor and collector, shall, so far as the county of Tunica is concerned, be divided between the sheriff of said county, who made the assessment of said county under said order, and the marshal, in the following proportions, to-wit, 2 per cent. to the assessor and 5 per cent. to the said marshal.

It is further orderrd and decreed that the restraining orders heretofore granted, to stay proceedings under the said orders, be and the same are hereby dissolved and discharged.

Ordered this, the eleventh, day of June, 1881.

R. A. HILL, Judge.

NOTE.

LOCAL TAXATION—LEVEE DISTRICTS. Municipal corporations, counties, or other artificial districts or subdivisions, have no inherent power of taxation. The right to tax is by delegation from the state, (*Daily* v. *Swope*, 47 Miss. 367,) so far as necessary for good government, (*Smith* v. *Corp. of Aberdeen*, 25 Miss. 458.) The legislature has power to impose a tax on a local distr.ct for the construction of local improvements, (*Williams* v. *Cammack*, 27 Miss. 210; *Alcorn* v. *Homer*, 38 Miss. 652; *Daily* v. *Swope*, 47 Miss. 367;) and the protection of lands subject to overflow is a proper object for the exercise of the power of local improvement and taxation, (*Daily* v. *Swope*, 47 Miss. 367.) The legislature may prescribe the result of a popular vote of the district as the contingency upon which a law shall go into operation or not. *Alcorn* v. *Hamer*, 38 Miss. 652. The power to sell the land upon failure to pay the tax assessed is but a means to an end legitimate and proper, and in itself a mere incident to

the power of taxation. *Williams* v. *Cammack*, 27 Miss. 209. Levees are not public improvements, but improvements for special local purposes, made by assessment on the property improved, (*McGehee* v. *Mathis*, 21 Ark. 40;) and such assessment for levee purposes is not a tax within the meaning of the constitution, (*Yeatman* v. *Crandall*, 11 La. Ann. 220; *Wallace* v. *Shelton*, 14 La. Ann. 498; *Richardson* v. *Morgan*, 16 La. Ann. 429.) That a charge imposed on all the property of a district, to be used in the construction of levees to protect the district from overflow, is a tax and not an assessment, see *People* v. *Whyler*, 41 Cal. 351. Lands not benefited are not within the provisions of the act, (*Shelby* v. *Levee Com'rs*, 14 La. Ann. 434, reaffirmed; *Bishop* v. *Marks*. 15 La. Ann. 147.) The act forming a levee district to be composed of several parishes is constitutional. *Yeatman* v. *Crandall*, 11 La. Ann. 220. The existence of a reclamation district as a public corporation may be established by implication arising from acts of the legislature. *People* v. *Recl. Dist.* 53 Cal. 346. See *People* v. *Williams*, 56 Cal. 647; *Recl. Dist. No.* 104 v. *Coghill*, 56 Cal. 607. An act authorizing an assessment of an annual tax on alluvial lands, specifically on each and every acre, for building and repairing levees. is not in violation of the constitution,(*Yeatman*, v. *Crandall*, 11 La. Ann. 220, reaffirmed; *Wallace* v. *Shelton*, 14 La. Ann. 498.) The commissioners cannot levy an assessment which does not cover all the land in the reclamation district. *Levee Dist.* 1 v. *Huber*, 57 Cal. 41. It is no valid objection that a part of the taxes to be derived from a portion of the district is directed to be applied to the payment of debts previously contracted by the authorities of that portion of the district. *Alcorn* v. *Homer*, 38 Miss. 652. Although the parish of Concordia may make enactments as to levees and their expenses, its police jury cannot create any valid debt for such purpose unless in the ordinance creating the debt means for its payment are provided. *Young* v. *Concordia Police Jury*, 32 La. Ann. 392. In an action to enforce the assessment, in which it appeared that plaintiff was not originally found according to law, the assessment was unauthorized and void. *Recl. Dist. No.* 3 v. *Kennedy*, 58 Cal. 124. The claim of the levee company for work, etc., is a debt, not against the state, but against the levee construction fund, composed of taxes assessed for levee purposes. *La. Levee Co.* v. *State*, 31 La. Ann. 250.

EQUALITY AND UNIFORMITY. The taxing power should be so exercised as to produce as near as possible equality and uniformity in the burdens imposed on the members of the community, (*Smith* v. *Corp. of Aberdeen*, 25 Miss. 458;) but the constitution does not take away the power to make local assessments for local improvements, upon the equitable principle that he who reaps the benefit must bear the burden, (*Yeatman* v. *Crandall*, 11 La. Ann. 220;) nor does it prohibit the legislature from levying a specific tax, nor does it declare that *all* taxes shall be equal and uniform, (*Smith* v. *Corp. of Aberdeen*, 25 Miss. 458.) The uniformity and equality clause in the state constitution applies to general taxes for general, state, county, city, and town purposes, and not to local assessments, where the money raised is expended on the property taxed. *Egyptian Levee Co.* v. *Hardin*, 27 Mo. 495; *Washington* v. *State*, 13 Ark. 752; *McGehee* v. *Mathis*, 21 Ark. 40. It is not necessary that the voters who elected the levee

commissioners should be equally taxed. Equality and uniformity in an inferior jurisdiction is not essential. *Selby* v. *Levee Com'rs,* 14 La. Ann. 434, reaffirmed; *Bishop* v. *Marks,* 15 La. Ann. 147. It is no objection to the constitutionality of an act that it operates injuriously against a party, as it must be submitted to as an individual sacrifice to the general good. *Williams* v. *Cammack,* 27 Miss. 224; *People* v. *Whyler,* 41 Cal. 351. A tax imposed by a corporation is uniform and equal where all persons within its limits share equal benefits ,while imposed uniformly on all property of the description assessed, (*Smith* v. *Corp. of Aberdeen,* 25 Miss. 458;) but the exemption of any private property from its operation is unconstitutional, (*People* v. *Whyler,* 41 Cal. 351.) An act assessing all lands at a uniform rate per acre is not unconstitutional as not being uniform or equal, (*McGehee* v. *Mathis,* 21 Ark. 40;) but taxes levied to pay for local improvements, assessed on parcels of property in the district in proportion to the benefits each parcel receives is unconstitutional; they must be levied on all property in proportion to its value, (*People* v. *Whyler,* 41 Cal. 351.) In point of principle and constitutional power there is no difference between taxes imposed for a general purpose and those imposed for a public local purpose. *Williams* v. *Cammack,* 27 Miss. 210.— [ED.