## CAMPBELLSVILLE LUMBER CO. v. HUBBERT.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1902.)

No. 994.

1. TAXATION—ASSESSMENT BY COURT—ACT OF LEGISLATURE—CONSTITUTIONALITY.

The act of the Kentucky legislature approved March 18, 1878, and the amendatory act approved February 27, 1882, authorizing a court, in certain contingencies, to assess the taxpayers of Taylor county, and enter and enforce judgments against them, to collect a judgment of such court recovered on bonds of such county, do not exceed the constitutional powers of such legislature.

2. SAME—FEDERAL COURT.

The powers granted by acts of the Kentucky legislature approved March 18, 1878, and February 27, 1882, authorizing a court in which a judgment is recovered against Taylor county on county bonds to assess the taxpayers to collect such judgment, may be exercised by a federal court.

3. SAME—NOTICE—DUE PROCESS OF LAW.

Act Ky. Feb. 27, 1882, providing that the commissioner appointed by the court to assess a tax shall file his list and give notice by three weeks' publication of such filing, and that any person interested may except thereto within thirty days, furnishes due process of law.[1]

4. SAME—IRREGULARITIES—OBJECTIONS—WHEN TOO LATE.

Under Act Ky. Feb. 27, 1882, authorizing a court in which a judgment is recovered on bonds of Taylor county to assess and collect a tax to pay such judgment, objections to irregularities and inequalities in such assessments come too late after judgment thereon has been entered.

5. STATUTORY CONSTRUCTION—MANDATORY OR DIRECTORY PROVISIONS.

When a statute gives a new and extraordinary remedy, and directs how the right to the remedy is to be acquired or enjoyed, the act should be strictly construed, and the steps pointed out for the enjoyment of the remedy provided should be construed as mandatory, rather than directory or optional.

6. TAXATION—STIPULATION IN BONDS—EXTRAORDINARY REMEDIES.

Under Act Ky. Feb. 27, 1882, amending Act March 18, 1878, authorizing a court in which judgment is recovered on bonds of Taylor county to assess and collect a tax to pay such judgment, making such judgment a lien on realty and personalty, and providing in section 10 that

---

[1] Due process of law in revenue proceedings, see note to Read v. Dingess, 8 C. C. A. 398.

bonds to be issued thereunder "shall on their face stipulate" that the holders shall be entitled to the remedies for the collection in such acts provided, the holders of such bonds only as contain such stipulation are entitled to such extraordinary remedies.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Marc Hubbert, the defendant in error, recovered a judgment in the court below against the county of Taylor (one of the counties of the state of Kentucky) upon matured interest coupons issued by the county. An execution upon this judgment was returned, "No property found." The judgment plaintiff thereupon sought to avail himself of the extraordinary remedy provided by an act of the Kentucky legislature approved February 27, 1882. The act referred to is an amendment of an act approved March 18, 1878; being a special act for the benefit of Taylor county. By the original act the county was authorized to issue new bonds in settlement and compromise of its existing indebtedness on terms therein named; and such act provided that, if the county should refuse to levy and collect a tax to pay any judgment upon the compromise bonds or coupons after due notice and demand, it should be the duty of the "circuit court," or, in vacation, of the "circuit judge of the Seventh judicial circuit," to make an order based on the last preceding assessment, "levying a tax and appointing a collector, whose duty it shall be to collect from the taxpayers of Taylor county sufficient to pay off such judgment," etc. This act was so amended by the act of February 27, 1882 (1 Acts 1881–82, p. 558), as to provide, am ng other things: (1) That any judgment on bonds or coupons issued under the act should constitute "a lien upon all real and personal property in said county, subject to taxation under the revenue laws of this commonwealth"; (2) "that if the court rendering such judgment shall be of opinion that such serious obstruction is likely to be offered to the enforcement of any such judgment as will materially delay it, it shall, on motion of the plaintiff therein, refer the same to a commissioner, with instructions to ascertain and report, on a day to be named, the amount which it will be necessary for the holder or owners of any such property to pay in order to raise promptly, in proportion to the value of such property owned by each, a sum sufficient to pay the said judgment, and all costs of the said suit, and the costs of collecting the same, making due allowance for probable delinquencies." By section 5 of this amending act the commissioner is directed to file his report "in the clerk's office of said court and publish in a newspaper in Taylor county or Marion county, once each week for three weeks, a notice of the filing of said report, and stating that the same will be subject to exceptions, to be filed in said clerk's office until a day to be mentioned in said notice, which day shall not be less than thirty nor more than forty days from the last day on which the said notice is to be published." The sixth and seventh sections provide for a hearing on exceptions so filed, and that, upon the approval of the report, "judgment shall be rendered against the parties named in the report for the amounts therein named, and at the expiration of ninety days from the date of said judgment several executions shall issue against all persons who have not then paid to the sheriff or other officer who collects executions from said court, for the sums adjudged to be due them respectively," etc. The eighth section provides that any surplus resulting after paying judgment and costs shall be paid over "to the commissioner of the sinking fund of said county to be used for the payment of the principal and interest of bonds issued under the act," etc. The tenth and last section of the act is in these words: "The bonds to be issued under the act to which this is an amendment, shall, on their face, stipulate that the holders of any of them, or any coupon thereof, shall be entitled to the remedies for the collection for the same herein, and in the act to which this is an amendment, provided for." To bring himself within the terms of this act, the defendant in error filed an affidavit in which he stated the issuance and return f an execution, the nonpayment of his judgment, and that "the public sentiment of the citizens of Taylor county is so hostile to the payment of

the bonded debt of the county of which the judgment in affiant's favor forms a part that such serious obstruction is likely to be afforded to the enforcement of such judgment as will materially delay its collection." It was further affirmed that the opposition to the payment of the county debt was so great that for several years past no person had been found willing to qualify as sheriff, and that, though the county court had levied a tax for the years 1896 and 1897 "to pay the interest on the bonds referred to in the petition in this case," the tax had not been collected, because there was no sheriff. Upon this petition a commissioner was appointed, who filed a report, setting out a list of some 2,000 taxpayers, and the amount which each should pay.. Notice was published, as required. of the filing of this report, and that it would remain open for exception 30 days after last publication. The county alone filed exceptions, all of which were overruled. Judgments were thereupon rendered against the several taxpayers, and executions issued. The judgment against the plaintiff in error was rendered on this report January 12, 1901, and execution issued April 23, 1901, for $123.76 and costs, as the proportional sum to be paid by the plaintiff in error.

Upon the issuance of this execution the plaintiff in error appeared and moved the court to set aside the judgment against it, and to quash the execution. These motions were predicated upon many objections, principal among them being: First, that the act of 1882, under which the plaintiff had proceeded, was void, under the constitution of Kentucky and of the United States, in so far as it gave power to any court to levy and assess and collect a tax or render a personal judgment against taxpayers of Taylor county upon a county debt, without notice or summons; second. that said act of 1882 had been repealed; third, that the remedy offered by the act of 1882 was not applicable to, or enforceable by, a United States court; fourth, that the commissioner had not made a proportional assessment of liability, but had grossly discriminated against the plaintiff in error; fifth, that the aggregate amount reported payable was more than five times the amount of the plaintiff's judgment and costs, and therefore a gross abuse of power, and unwarranted by the law; sixth, that the plaintiff had not shown himself entitled to the extraordinary remedies extended by the act of 1882, inasmuch as it did not appear that the bonds from which the coupons in judgment had been detached did, "on their face," stipulate that the holders "* *. * shall be entitled to the remedies for the collection for the same herein * * * provided for."

The motions were supported by affidavits. From these affidavits it appears that the bonds held by plaintiff were in these words:

"United States of America, State of Kentucky.
"No. 200.                   $50.00.
"For Funding the Cumberland and Ohio Railroad Bonds.

"Twenty years after date, with the option reserved to pay at any time after one year from date, upon thirty days' notice given in a newspaper published in the city of Louisville, Ky., the county of Taylor, in the state of Kentucky, for value received, promises to pay to bearer, at the Bank of Kentucky, in the city of Louisville, Ky., the sum of fifty dollars, with interest thereon at the rate of six per cent. per annum, payable semiannually at the said bank, upon presentation of the proper coupons, hereto attached. This bond is one of an issue, amounting in all to one hundred and twenty-five thousand dollars, authorized by an act of the general assembly of the commonwealth of Kentucky approved March 18. 1878. In witness whereof, the county of Taylor has caused this bond to be signed by the judge and clerk of the county, and the seal of the county to be impressed hereon, and the coupons to be signed by the clerk of the county, this first day of October, 1887.

  "[Signed]        ————————, Judge County Court.
  "[Signed]        ————————, Clerk County Court."

. Written across face: "$50.00."

The motions were denied. A bill of exceptions was allowed, and a writ of error from the judgment in favor of Marc Hubbert against the Campbells-

ville Lumber Company, and from the judgment refusing to set aside said judgment and refusing to quash the execution, was allowed.

Ernest Macpherson, for plaintiff in error.
Harris & Marshall, for defendant in error.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. For the purposes of this case, we may assume that the legislature of Kentucky did not exceed its constitutional powers in providing the very stringent remedies found in the act approved March 18, 1878, and the law amending that act approved February 27, 1882. The power to impose a tax or raise money by general assessment for a public purpose is a very high attribute of sovereignty, and can only be exercised when authorized by express legislative authority. Supervisors v. Rogers, 7 Wall. 175, 19 L. Ed. 162; Rees v. City of Watertown, 19 Wall. 107, 116, 22 L. Ed. 72; Heine v. Levee Com'rs, 19 Wall. 655, 22 L. Ed. 223; Thompson v. Allen Co., 115 U. S. 550, 6 Sup. Ct. 140, 29 L. Ed. 472; McLean Co. Precinct v. Deposit Bank of Owensboro, 81 Ky. 254; Grand Rapids School Furniture Co. v. Trustees of School Dist. No. 29, 102 Ky. 556, 44 S. W. 98. Even the power to appoint a collector to collect a tax lawfully assessed does not exist in a court unless expressly authorized by legislative authority. Thompson v. Allen Co., 115 U. S. 550, 6 Sup. Ct. 140, 29 L. Ed. 472. Nevertheless, when the legislature has deputed to a court the power, in given circumstances, to levy and collect a tax for the satisfaction of a judgment rendered by that court, the power has been exercised without question. Stansell v. Levee Board (D. C.) 13 Fed. 846; Supervisors v. Rogers, 7 Wall. 175, 19 L. Ed. 162. In the cases cited above the power was exercised by a federal court by virtue of a state statute, as a remedy which followed the debt, and which might be enforced by a United States court in a case where federal jurisdiction otherwise existed.

2. Neither are we prepared to say that there has not been due process of law, in the opportunity afforded to appear and be heard by exceptions in pursuance of the publication required by the act. The proceeding was in all its essentials a proceeding to assess and collect a tax through the special machinery provided by the act. Notice by publication, and opportunity to appear and be heard, is due process, in proceedings of this nature. Lent v. Tillson, 140 U. S. 316, 326, 11 Sup. Ct. 825, 35 L. Ed. 419; Paulsen v. City of Portland, 149 U. S. 30, 40, 13 Sup. Ct. 750, 37 L. Ed. 637.

3. Objections which go only to irregularities in the report, such as discriminations between taxpayers, or an excessive amount, do not go to the validity of the judgment, and come too late for consideration after judgment.

4. The most serious objection to the validity of the judgments against individual taxpayers arises upon the effect and meaning of the tenth section of the act of 1882. That section is in these words:

"The bonds to be issued under the act to which this is an amendment, shall, on their face, stipulate that the holders of any of them, or any coupon thereof, shall be entitled to the remedies for the collection for the same herein, and in the act to which this is an amendment, provided for."

If that provision of the law is mandatory, the defendant in error has not averred or shown a judgment on bonds or coupons containing such a stipulation; for neither his original petition, praying a judgment against the county, nor his auxiliary petition for the extraordinary remedy afforded by the act of 1882, contains any averment which would bring him within the terms of this section of the act. On the contrary, the plaintiff in error, in support of its motion to set aside the judgment against it, has affirmatively shown that the bonds issued subsequent to this act of 1882 contained no such stipulation. We have already set out the form of the bonds from which the coupons in judgment come. This shows that the bonds, though issued in October, 1887, contain no recital other than that "this bond is one of an issue, amounting in all to one hundred and twenty-five thousand dollars, authorized by an act of the general assembly of the commonwealth of Kentucky approved March 18, 1878." For the defendant in error it is contended that the requirement of the tenth section is directory in its nature, and it is therefore immaterial whether it has been complied with or not. "By directory provision," says Judge Cooley, "is meant that they are to be considered as giving directions which ought to be followed, but not so limiting the power in respect to which the directions are given that it cannot be effectually exercised without observing them." Cooley, Const. Lim. *64. Lord Penzance, in Howard v. Bodington, 2 Prob. Div. 211, after commenting on the difficulty of gathering any rule from the cases, said:

"I believe, as far as any rule is concerned, you cannot safely go farther than that in each case you must look to the subject-matter, consider the importance of the provision to the general object intended to be secured by the act, and, upon a review of the case in that aspect, decide whether the enactment is what is called 'imperative,' or 'directory.'"

Applying the general principles stated to the case in hand, we find this debatable provision to be a part of one of the most stringent and extraordinary acts which has come under our observation. This appears in two respects: (1) A judgment on any bond or coupon is made a lien on all the taxable property of the county; (2) if the court rendering a judgment shall be of opinion that such serious obstruction is likely to be offered to the enforcement of any such judgment in the ordinary methods for collection of a judgment against a public municipality, or by the quite unusual power conferred under the law before this amendment, it is given power, through a commissioner, to make an assessment, in effect, upon all the taxpayers, and compel collection, through individual judgments and executions, of a sum sufficient to pay the judgment and all costs. This extraordinary power of assessing and collecting a tax is one in its nature nonjudicial. The courts, in the absence of express legislative authority, have steadily refused to undertake even the collection of a tax lawfully assessed by the taxing authority. Rees v. City of Watertown, 19 Wall. 116, 117, 22 L. Ed. 72; Thompson v.

Allen Co., 115 U. S. 550, 6 Sup. Ct. 140, 29 L. Ed. 472. For the purpose of modifying the apparent stringency of this enactment, it has been suggested that it has its prototype in the New England rule by which all taxpayers are liable in solido for certain municipal debts. But the New England rule had no common-law origin, and has never been copied elsewhere. It was a rule applicable only to a limited class of organizations, feebly endowed with corporate life. Having no common fund to pay debts, and no mode being provided by which debts could be enforced through the imposition of a tax, there grew up the theory that the inhabitants were individually liable for such corporate debts. The scheme was crude, and has found favor nowhere. Rees v. City of Watertown, 19 Wall. 107, 123, 22 L. Ed. 72; Russel v. Men of Devon Co., 2 Term R. 667; Emeric v. Gilman, 10 Cal. 408, 70 Am. Dec. 742; Cooley, Const. Lim. *246. As observed by Judge Cooley, the principle of individual liability for a public debt is not at all applicable where the law makes provision "for compulsory taxation to satisfy any judgment recovered against the corporate body." The law must, then, be regarded as a wide departure from ordinary methods for enforcing the payment of a judgment against a municipality already armed with full power to assess and collect a tax to meet its obligations. To the novel and summary character of the remedy provided by the act of 1882 must be added the fact that its operation must be attended with unusual harshness and extraordinary expense, growing out of the fact that separate judgments are provided for against taxpayers, upon which separate executions must go. Such an act should be strictly construed, and a case clearly made out before any relief should be extended thereunder. In this general view of the act, shall we be justified in assuming that the general assembly intended that so stringent and expensive a remedy should be awarded to creditors, unless their bonds show on their face, in plain terms, an agreement that this remedy shall be available? The provision that the bonds should, on their face, stipulate for the special remedies provided by the act authorizing them, was at least a reasonable requirement. The purpose, doubtless, was to compel the authorities issuing them to recognize the fact that by such stipulation they were consenting to the special and stringent remedies of the act. By this remedy each taxpayer is to be subjected to the liability of having a judgment rendered against him personally for his proportion of the aggregate assessment made by the court rendering judgment against the county. The clause of the act imposing this condition is in terms imperative. It reads:

"The bonds to be issued under the act to which this is an amendment shall, on their face, stipulate that the holders of any of them, or any coupon thereof, shall be entitled to the remedies for the collection for the same herein, and in the act to which this is an amendment, provided for."

Undoubtedly, "shall" is often used in a directory sense. But the presumption always is that words used in a statute are used in their ordinary sense. If a different interpretation is sought, it must rest upon something in the character of the legislation or in the context which will justify a different meaning. But what is it that the

provision requires shall be shown on the face of the bonds to be issued? The bonds "shall, on their face, stipulate," etc.; that is, the bonds, "on their face," shall contain the stipulation that any holder shall be entitled to the benefit of the special and extraordinary remedies provided by the act. To stipulate is to make an agreement; to bargain; to contract; to settle terms, etc. The provision, then, is that the bonds to be issued "shall, on their face," contain an agreement, bargain, or contract that the holder shall have the benefit of the special, unusual, and extraordinary remedies provided by the act as amended. It must be conceded that, if the 10th section of the act had been omitted entirely, holders of bonds issued under the act of 1878, as amended by this act of 1882, would have been entitled to the remedies therein provided. But, in view of this very peculiar and imperative provision, are holders of bonds issued by authority of the act entitled to these novel and drastic remedies, unless they exact bonds which do, on their face, stipulate for them? The answer, in its last analysis, must turn upon the legislative intent. Does it plainly appear that this requirement was one of mere form, and that the intent was that the creditor should be able to enforce the special remedies provided by the enabling act, whether stipulated for on the face of the bonds or not? If this "stipulation" appeared on some part of the bond other than its face, we might well say the act was directory in respect to that, and the setting out of the stipulation on some other part of the bond might be regarded as a substantial compliance. But this stipulation nowhere appears, and the only suggestion is that the recital in the bonds that they are "authorized by an act of the general assembly of the commonwealth of Kentucky approved March 18, 1878," operates to give to the holder all the remedies provided by the act referred to, as well as those peculiar to the amending act. We are not to be understood as casting doubt upon the validity of the bonds as evidence of a valid county indebtedness. No such question is here involved. We confine ourselves to the question as to whether a holder of bonds purporting to be issued under the act of March 18, 1878, is entitled to the special remedies provided by that act and the act of 1882 amending that act. Every purchaser of municipal bonds must take notice of the terms and conditions of the enabling act under which the bonds purport to have issued. Barnett v. City of Denison, 145 U. S. 135, 12 Sup. Ct. 819, 36 L. Ed. 652; Barnum v. Town of Okolona, 148 U. S. 393, 13 Sup. Ct. 638, 37 L. Ed. 495. When these bonds were issued the act of 1878, as amended, required that bonds issued under that act should show on their face the stipulation in question. These bonds did not comply with this provision, and a purchaser must be held to become such with notice that they did not, in this respect, comply with the enabling act.

An attentive consideration of the principle of statutory construction here involved leads us to conclude that when a statute gives a new and unusual remedy, and directs how the right to the remedy is to be acquired or enjoyed, and how it is to be enforced, the act should be strictly construed; and the validity of all acts done under authority of such an act will depend upon a compliance with its

terms. In respect to such acts the steps pointed out for the acquisition, preservation, and enforcement of the remedies provided should be construed as mandatory, rather than optional. Suth. St. Const. §§ 454, 458, and cases cited; Atkins v. Kinnan, 20 Wend. 241, 249, 32 Am. Dec. 534; Davison v. Gill, 1 East, 64; French v. Edwards, 13 Wall. 506, 20 L. Ed. 702; Lyon v. Alley, 130 U. S. 177, 9 Sup. Ct. 480, 32 L. Ed. 899.

Counsel for defendant in error have cited Rock Creek Tp. v. Strong, 96 U. S. 271, 24 L. Ed. 815, and Supervisors v. Galbraith, 99 U. S. 214, 25 L. Ed. 410, as authority for their contention that this provision is directory. In Rock Creek Tp. v. Strong the act authorizing issuance of the bonds involved provided that the bonds should be payable in not less than 5 nor more than 30 years from date. Bonds were issued dated September 10, 1872, and made payable 30 years from October 15, 1872, with interest thereon from October 15, 1872. When actually delivered, did not appear. As they were payable in 30 years from the time they began to bear interest, they were practically 30-year bonds. "Their legal effect," said the court, "is precisely what it would have been had the date inserted been October 15, instead of September 10, 1872. Substantially the legislative direction was followed." In Supervisors v. Galbraith the departure from the directions of the authorizing act was even more immaterial. The act said the bonds should be made payable to "the railroad company and assigns." The bonds were made payable to the railroad company "or bearer." The provision was held to be one of form, which had been substantially complied with. Barnett v. City of Denison, 145 U. S. 135, 12 Sup. Ct. 819, 36 L. Ed. 652, and Barnum v. Town of Okolona, 148 U. S. 393, 13 Sup. Ct. 638, 37 L. Ed. 495, are cases in which a departure from material directions of the act authorizing the bonds was held fatal. In Barnett v. City of Denison the charter of the city required that bonds issued by it should specify for what purpose they were issued. The bonds issued referred on their face to an ordinance as authorizing their issuance, but did not give its title or contents, and did not otherwise state the "purpose" for which they had been issued. The court held the recitals did not satisfy the law, so as to protect an innocent holder from defenses which might otherwise have been made. In City of Cadillac v. Woonsocket Inst. for Savings, 7 C. C. A. 574, 58 Fed. 935, and City of Gladstone v. Throop, 18 C. C. A. 61, 71 Fed. 341, we had occasion to distinguish Barnett v. City of Denison. In Barnum v. Town of Okolona, bonds were involved which were issued under an act which prescribed that they should not extend beyond 10 years from the date of issuance. The bonds as issued were made payable 17 years after date. They were held void; the court holding that there was no authority to issue bonds, except subject to the restrictions named in the enabling act.

The conclusion we reach is that the plaintiff below did not bring himself within the special conditions of the act of 1882, and that the judgment against the plaintiff in error was therefore wholly unauthorized and void. The judgment is accordingly reversed, with costs.