THOMAS & PIERSON *v.* UNITED STATES (No. 3403)[1]

United States Court of Customs and Patent Appeals, December 17, 1931

*Barnes, Richardson & Halstead* (*Mary Rehan* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument October 16, 1931, by Mr. Richardson and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of knit .wool wearing apparel, not scalloped, was assessed for duty by the collector at the port of New York as "knit lace wearing apparel" at 90 per centum ad valorem under paragraph 1430 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1430. Laces, lace window curtains, burnt-out laces and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps,

---

[1] T. D. 45454.

278

ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished (except materials and articles provided for in paragraphs 920, 1006, 1404, 1406, and 1424 of this Act), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213 of this Act, 90 per centum ad valorem;  *  *  *.

The importer protested, claiming that the merchandise was not dutiable as assessed by the collector, but that it was properly dutiable, alternatively, under various paragraphs of that act.

However, there was no claim in the protest that the merchandise was properly dutiable as knit wool wearing apparel under paragraph 1114 of that act, the pertinent part of which reads as follows:

. PAR. 1114.  *  *  *
Outerwear and other articles, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for,  *  *  *  valued at more than $2 per pound; 45 cents per pound and 50 per centum ad valorem.

In view of the fact that the paragraphs claimed in the protest are not relied upon by appellants, we deem it unnecessary to quote them here.

In his answer to the protest, dated May 29, 1929, the appraiser reported as follows:

The merchandise marked "A" consists of knit wool wearing apparel, not scalloped, returned as knit lace wearing apparel at 90 per centum, paragraph 1430, act of 1922. Merchandise of this character in T. D. 43013 was held to be not lace articles or articles made from lace. Following the principle laid down in the above decision, merchandise of this character *would now be returned as knit wool wearing apparel valued at more than $2 per pound at 45 cents per pound and 50 per centum ad valorem under paragraph 1114 of the same act, as now reported on the invoice.*
Note T. D. 43152. (Italics ours.)

The collector's letter, dated June 13, 1929, transmitting the papers to the United States Customs Court, was, according to the record, received by the clerk of that court June 15, 1929.

On July 24, 1930, counsel for the parties signed the following stipulation:

It is hereby stipulated and agreed by and between the Assistant Attorney General and the attorneys for the plaintiff:
That the appraiser's report and collector's letter may be incorporated herein and that the items marked "A" are the same type and character as those decided in T. D. 43013.
That the record in T. D. 43013 may be incorporated and the case submitted.

The stipulation, according to the record, was not received by the clerk of the United States Customs Court until September 5, 1930.

Thereafter, on October 20, 1930, the court below, in an opinion by Tilson, Judge, rendered its decision in the case, holding that the merchandise was not dutiable as assessed by the collector, but that it was properly dutiable at 45 cents per pound and 50 per centum ad valorem under paragraph 1114, *supra.* In concluding its decision, the court said:

* * * However, as plaintiffs failed to make any claim under paragraph 1114 of the Tariff Act of 1922, the protest is overruled, without affirming the action of the collector as to the items of merchandise marked "A." Let judgment be entered accordingly.

On the same date, October 20, 1930, judgment was entered in accordance with the court's decision. Thereafter, on October 22, 1930, counsel for appellants filed a motion petitioning the court to set aside its decision and the submission of the cause, and requesting that the case be placed upon the "calendar." The motion reads as follows:

Upon the annexed affidavit and the facts set forth therein, the attorneys for the plaintiffs herein move that the submission and decision in the above-entitled case be set aside and the case placed upon the calendar.

In support of the motion, and annexed thereto, appears the affidavit of Mary Rehan, which, due to its importance, we quote:

Mary Rehan, being duly sworn, deposes and says: That protest 357839–G/12363, covering an entry by Thomas & Pierson for the account of Elizabeth Arden, arrived at the United States Customs Court.

That in enumerating the claims in the protest against the assessment of duty at 90 per centum ad valorem, the principal claim that the merchandise was properly dutiable at the rate of 45 cents per pound and 50 per centum ad valorem under paragraph 1114 of the Tariff Act of 1922 was omitted through error. That the appraiser in his report to the collector described the merchandise as knit wool wearing apparel and stated that the items marked "A" were properly dutiable under paragraph 1114.

That just before going on her vacation and upon the arrival of this case at the court, the deponent drew a stipulation which was rechecked by the appraiser who passed the merchandise as being true in fact, and that the items marked "A" were the same type and character as those in T. D. 43013.

That while on her vacation and following instructions from deponent, Mr. King, of her office, presented the stipulation to Mr. Peter A. Abeles, of the Assistant Attorney General's office. Said stipulation was signed and returned, with other papers for action, on deponent's desk at the court.

The deponent, according to her best memory and belief, returned from her vacation a day or so after the signing of this stipulation. That the case has never appeared upon the docket and the deponent believed that it had been put back in the files so as to be properly placed upon the docket so that a motion to amend under section 514 might be filed.

*That through error, the protest was submitted with other protests upon which the deponent had been working and the deponent had no knowledge that this case had been submitted, but was under the impression that it had been returned to the files to be properly docketed. That the decision in this case was the first notice to the deponent that the case had been submitted.*

Wherefore, because of this mistake on the part of the deponent, she now moves the court to set aside the *submission which was made through error* and to set aside the decision which is the result of this submission. (Italics ours.)

MARY REHAN.

Thereafter, on November 14, 1930, the court below denied the motion of appellants in the following language:

The motion for rehearing in this case is hereby denied. Judgment will be entered accordingly.

The judgment was duly entered, and appellants appealed to this court.

It is contended by counsel for appellants that the stipulation submitting the cause to the court below, and upon which the case was decided, was inadvertently filed with the papers in the case; that counsel had no intention of submitting the cause until the same had been placed on the trial calendar and an opportunity afforded appellants to file a motion for leave to amend the protest, claiming the merchandise to be dutiable, as stated by the appraiser in his report, at 45 cents per pound and 50 per centum ad valorem under paragraph 1114, *supra;* that counsel had no idea that the stipulation had been filed and the cause submitted until they were notified of the court's decision; that, as the case had never appeared on the calendar, and, as there had never been any "docket call thereof," appellants had a right, under the provisions of section 514 of the Tariff Act of 1922, to amend the protest, subject, of course, to the legal discretion of the court below; that, it having been made to appear to the court that the cause was submitted inadvertently and unintentionally, the denial of appellants' motion to set aside the judgment and the submission of the cause was an abuse of discretion; and that, therefore, the judgment should be reversed.

It is contended by counsel for the Government that the filing of the stipulation, submitting the case to the court, constituted—

(1) Either a first docket call; or

(2) That there was a waiver of the right to amend the protest in the case; and

(3) That the importers were willing to have all the formalities put aside, that is, of placing the case on the calendar of the court, and of having the case called for trial, in the hope of bringing the issues in the case before the court for a decision to avoid the necessity of trial.

Counsel for the Government further contends that the provisions of section 514 of the Tariff Act of 1922, granting importers the right to amend a protest, in the discretion of the court, "at any time prior to the first docket call thereof," were intended to require importers to define the issues in the case prior to the trial thereof in order to enable the Government to properly prepare and present its case to the court; that the court below was without power to set aside its

decision and the submission of the cause and place the case on the calendar for the purpose of permitting an amendment to the protest; and that, therefore, the judgment below should be affirmed.

It appears from the record that the case never appeared on the court's trial calendar or docket, and that there had never been a calendar or docket call thereof.

Section 514 of the Tariff Act of 1922 provides, among other things, that "under such rules as the Board of General Appraisers may prescribe and in its discretion, a protest may be amended at any time prior to the *first docket call thereof.*" (Italics ours.)

Rule 5 of the rules of the United States Customs Court, adopted December 22, 1930, provides that the clerk of that court—

* * * shall designate a clerk, to be known as the calendar clerk, whose duty it shall be to prepare for the several divisions, with the approval of the judges thereof, trial calendars of cases that are properly cognizable before them, placing on the calendar, in the order of their filing, such cases as may be disposed of conveniently.

Rule 14 of that court provides, in part, as follows:

In all cases on the New York calendars the parties plaintiff, or their attorney of record, and all other persons who may be entitled thereto, shall be given ten days' notice by mail of the day and hour set for the call of the calendar.

Section 518 of the Tariff Act of 1922, so far as the same is pertinent to the issues here, provides:

* * * The board of three general appraisers deciding a case or a general appraiser deciding an appeal for a reappraisement may, upon the motion of either party made within thirty days next after such decision, grant a rehearing or retrial of said case when, in the opinion of said board or said general appraiser the ends of justice so require.

It must have been obvious to the court below, at the time its original decision was rendered, either that the case had been inadvertently submitted, or that counsel representing the importers were acting without regard to their obligations as members of the bar of that court. It plainly appeared at that time, as stated by the court in its decision, that the proper paragraph of the tariff act had not been claimed in the protest, and, as this fact appeared from the report of the appraiser, made a part of the record by stipulation, it was evident that counsel for importers were fully aware of it. Accordingly, the court could not have been taken by surprise when the motion to set aside its judgment and the submission of the cause, supported by an affidavit showing that the cause had been inadvertently and unintentionally submitted, was filed by counsel for appellants. Nevertheless, being fully advised in the premises, the court denied the motion.

It is unthinkable that the court could have doubted the truth of the allegations contained in the affidavit. The allegations were not only

282

consistent with all the facts and circumstances of record, and were not denied by the Government, but they were made by a member of the bar of that court. It plainly appeared from the affidavit, at the time the motion was overruled, that the cause had never been submitted with the intelligent consent of counsel for appellants. The court must have been of opinion that, under the circumstances, it was without power to permit an amendment to the protest; otherwise, the motion would undoubtedly have been granted.

There was no express waiver of the right to amend the protest and, as the cause was submitted unintentionally and inadvertently by counsel for appellants, there was nothing upon which a waiver by implication could be founded. At the time of the oral arguments in this court, counsel for the Government stated that the facts as stipulated by the parties warranted the concession that the merchandise was erroneously assessed by the collector and that it was properly dutiable under paragraph 1114, *supra*, as held by the court below. Substantially the same concession is made in the Government's brief. This being so, the Government was not misled to its prejudice or otherwise, and the doctrine of waiver by estoppel is not involved. See 40 Cyc. 254 *et seq.*

Accordingly, as there was no waiver of the right to amend the protest and, as there had never been any docket call thereof, the court had the power to set aside its decision and the submission of the cause, and place the case on the calendar so that the protest could be amended. Having the power to act, the court's failure to do so can not be defended by invoking the legal proposition that the motion was addressed to its discretion. The motion was addressed to the legal, not to the arbitrary or capricious, discretion of the court. In view of the uncontradicted facts of record, we think it was the positive duty of the court under the law, in order to prevent a miscarriage of justice, to have sustained the motion. *Draeger Shipping Co.* v. *United States*, 13 Ct. Cust. Appls. 419, T. D. 41341. See also *Monroe-Goldkamp Co.* v. *United States*, 13 Ct. Cust. Appls. 545, T. D. 41429; *Bache & Co.* v. *United States*, 6 Ct. Cust. Appls. 507, T. D. 36128.

The facts and the law involved in the case at bar were conceded by all concerned. Were this not so, a different situation would, of course, be presented.

The primary duty of the courts of the United States is to do justice under the law. A failure in this regard, the opportunity being afforded, can never be defended, and any attempt to do so must of necessity be based on a denial of the existence of those fundamental principles of justice upon which courts are founded.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

LENROOT, Judge: I regret that I feel compelled to dissent from the decision of the majority in this case.

I agree with the majority that, so far as this particular case is concerned, its conclusion will result in exacting a rate of duty upon the merchandise involved that should have been assessed by the collector in the first instance, but I do not think that this court is warranted in bringing about this result unless the same can be done by the application of well-settled principles of law.

The majority finds that in this case there was an abuse of discretion by the lower court in denying a motion for rehearing herein. It is therefore important to consider what is meant by the phrase "abuse of discretion."

In the case of *People* v. *New York Central R. Co.*, 29 N. Y. 418, it was held that the exercise of an honest judgment, however erroneous it may appear to be, does not constitute abuse of discretion, but that the question is, Has the result arrived at been produced by exercise of an arbitrary and unlawful discretion?

In *State* v. *Griffin*, 100 S. C. 331, 84 S. E. 876, it was held that the abuse of discretion that authorizes an appellate court to reverse denial of a new trial implies not merely an error of judgment, but error of judgment that is plain.

In the case of *In re Horowitz*, 250 Fed. 106, it was held that an abuse of discretion means an unreasonable departure from considered precedents and settled judicial custom which is error of law.

From the authorities that I have been able to examine, I think that it may be said that in order to constitute an abuse of discretion it must appear that an error of law has been committed by the lower court in this case. The majority finds that such error is manifest; to this I can not agree.

The attorneys of record in the lower court compose a firm of the very highest standing. There is no affidavit and no showing in the record by any of these attorneys that they or any of them were not aware of the filing of the stipulation. The only showing in the record upon which the motion is based is an affidavit by an employee of this firm, who is a member of the bar of the lower court. This affidavit does not state that this employee was in sole charge of this case for the firm. While the affidavit does state that an error was made in not claiming paragraph 1114 in the protest, it does not state when this error was discovered; nor does it state whether it was a clerical error or an error of judgment. While it may be inferred from the affidavit that the error was discovered after the stipulation in question was signed but before it was filed, it certainly does not appear that such error was realized by any of the attorneys of record

or any of their employees prior to the making of the stipulation here in question. The affidavit does not state for what purpose the motion is made, although I think it may be inferred from the body of the affidavit that the purpose was to enable appellants' counsel to move to amend the protest. Nothing herein should be construed as reflecting in the slightest degree upon the credibility of the maker of the affidavit.

To my mind, the fundamental error of the majority is that it assumes and, I think, in effect holds, that where the parties to a lawsuit deliberately enter into a stipulation, without any agreement that the filing of that stipulation shall be withheld, it is at the option of the party who may have manual possession of the stipulation either to file it or withhold it, and the majority opinion assumes that after a written stipulation is entered into it is improperly in the record if filed by the party having possession of it when he intended to withhold such filing until some future time.

This brings us to a consideration of the nature of a stipulation entered into relative to a proceeding in court. The authorities are uniform that a stipulation is an agreement of an attorney entered into for the purpose of binding his client, so far as he may do so. *Campbellsville Lumber Co.* v. *Hubbert*, 112 Fed. 718; *In re More's Estate*, 143 Cal. 493, 77 Pac. 407. It is also well settled that a written stipulation may be enforced, though not filed, unless forbidden by law. *Wall et al.* v. *Mines*, 130 Cal. 27, 62 Pac. 386.

When the stipulation here in question was made, the Government had just as much right to file it as did appellants, and the mere fact that appellants may have had manual possession of the stipulation and the Government did not have a duplicate of it did not affect the right of the Government to have the stipulation filed forthwith after its signing. I have no doubt that the next day after the stipulation was signed the Government might have demanded from appellants that they file the stipulation and that, if appellants failed or refused to do so, the court could have entered an order requiring that it be filed. It seems to me that it would be a strange rule indeed if, when parties to a suit enter into a stipulation, it may be filed or not at the option of one of the parties. So in this case, assuming that the stipulation was inadvertently filed by appellants, when filed, the Government had a right to stand upon it and to insist that its terms be carried out, which the Government has done.

The majority opinion treats said stipulation as a unilateral agreement for the benefit of appellants only. It is not such an agreement but is equally binding upon both parties. When the stipulation was made the Government had the same rights as had appellants, and appellants had no greater rights than had the Government. It will not be contended that, if the Government attorneys had had manual

possession of this stipulation, they could, on behalf of the Government, at their option withhold the filing of it. The view of the majority is, in effect, that appellants could bind the Government by filing the stipulation, or relieve themselves from the full effects of the stipulation by withholding it after the stipulation was made.

The next question is as to the effect of the stipulation when filed. As I read the opinion of the majority, it is to the effect that, notwithstanding the parties have deliberately stipulated that upon the agreed statement of facts the cause should be submitted, nevertheless the court below could not then consider the case for final determination, but must first place the case upon the trial calendar and give 10 days' notice to appellants and the Government of the day and hour set for the call of the calendar. This seems to me absurd; when parties stipulate that the cause shall be submitted to the court, why go through the useless formalities of placing the case upon the trial calendar, the clerk of the court sending notices to the parties, and the court calling the calendar for the purpose of fixing a date for trial when it has already been agreed that the case be submitted without trial? In my judgment, the effect of the majority opinion is that hereafter, where parties stipulate that a case may be submitted to the court, it can not be so done unless the court goes through all the formalities as if such stipulation had not been made. It is clear to me that when parties stipulate that a case shall be submitted it means that it shall be submitted for decision upon the pleadings as they then stand and upon the facts agreed upon, the right to take testimony, amend the pleadings, or make other motions with reference thereto being waived, and the court may at once, upon the filing of such stipulation, take up the case and decide it.

When this stipulation was made the court had complete jurisdiction of both the parties and the subject matter; this is not denied. It seems clear to me that when the parties agree to submit a cause to a court their intention is to refer it at once to the court for disposition.

If, in this case, there had been any showing of an agreement to withhold the filing of the stipulation, or if there had been any showing that the stipulation was inadvertently made and that appellants desired to be relieved from its effects for that reason, a very different question would be presented, but there is no such showing in this case. Under these circumstances I can not see how the lower court can be charged with an abuse of discretion in denying the motion for rehearing.

The majority opinion states:

The primary duty of the courts of the United States is to do justice under the law. A failure in this regard, the opportunity being afforded, can never be defended, and any attempt to do so must of necessity be based on a denial of the existence of those fundamental principles of justice upon which courts are founded.

286

With this I am in full' accord, but it is no part of the duty of a court to relieve parties from stipulations deliberately made, without showing of reasons for such relief, and if the court below was of the opinion that, inasmuch as there was no proceeding of any character by appellants to relieve themselves of the stipulation deliberately made, and denied the motion for that reason, as it may have done, we can not say that it was an abuse of discretion to deny the motion for rehearing. Furthermore, it very frequently happens that this court, in the exercise of its customs jurisdiction, finds that the collector has erred in his classification and assessment of merchandise for duty, but, because the importer has not made a proper claim in his protest, this court is without power to give him relief. This is because, where the importer has not made a proper claim, he has by his own omission put himself in a position where, under the law, relief can not be given him; and so, if an importer deliberately makes a stipulation with reference to a pending cause under which he can not be given relief that he would otherwise be entitled to, the lack of remedy should not be attributed to the courts but to the act of the party himself.

As the record does not show any agreement upon the part of the Government that the said stipulation should be withheld from filing, and does not show or claim that said stipulation was inadvertently made by appellants, even assuming that in all other respects the record made was sufficient to require the court to grant the motion for rehearing, the absence from the record of the essential facts last above indicated, in my opinion, precludes us from holding that there was an abuse of discretion upon the part of the lower court in denying the motion for rehearing.

It is my opinion, for the foregoing reasons, that it was no abuse of discretion for the lower court to deny the motion for rehearing in this case, and its judgment should be affirmed.

### DISSENTING OPINION

BLAND, Judge: I agree with much that is said in the majority opinion but I disagree with some of the statements of fact mentioned in the majority opinion and with the conclusion reached.

If the affidavit filed by Mary Rehan had stated all the facts which were stated in oral argument, I can see no possible reason why the court should not have sustained the motion to set aside the submission and the decision and have placed the case upon the calendar where the protest could have been amended in accordance with law, and thereby do justice to the parties. My difficulty in agreeing with the position of the majority arises from what I believe to be fatal defects in the affidavit. I do not think it is sufficient to say that the submission was made through error. While under the circumstances

it might have been regarded as sufficient by the court below, it is not
sufficient for me to agree that the court has abused its discretion in
refusing to set aside the submission and decision upon such a showing.
If I had been in the position of the trial court, and nothing more had
appeared to the contrary than the facts set up in the affidavit, I would
have regarded it as sufficient to have caused me to set aside the sub-
mission and decision. But, under the circumstances, I am unwilling
to agree that the court abused its discretion.

The trial court has the right to require that the attorneys who
practice before it not only show diligence and close application to
their duties in the court, but to require of them that when they seek
to set aside its judgments they shall make a showing which eliminates
the probability of lack of diligence.

I would like to agree to granting relief in such cases of glaring
injustice to litigants as is obvious in the case at bar, but I know of
no way to do it except by setting a precedent which may lead to
consequences of far graver import.

The burden of the Government's argument is to the effect that the
filing of the stipulation to submit waived the right to amend. Of
course it waived the right to amend if intentionally filed, but if the
showing was sufficient to convince the court that the submission
which brought the stipulation before the court was unintentional
and excusable, the submission should have been set aside, in which
instance there would be no waiver of the right to amend.

I do not agree with the contention of Judge Lenroot in his dissent-
ing opinion to the effect that the court could not set aside the stipula-
tion at the request of appellant because the interests of the Govern-
ment were at stake as well as those of the appellant. The court had
a right to set aside the submission which temporarily set aside the
stipulation. In any further proceedings in the case the stipulation
might have the effect which Judge Lenroot contends for, but if the
submission were set aside, and it should have been set aside upon a
proper showing of inadvertence, the stipulation would have remained
in abeyance. The stipulation was only intended to control when
submitted. If the submission of the case containing the stipulation
was an inadvertence and was set aside, the stipulation contained
therein could not operate to make such submission irrevocable.

Furthermore the majority opinion states: "It plainly appeared
from the affidavit, at the time the motion was overruled, that the
cause had never been submitted with the intelligent consent of
counsel for appellants." I do not think the affidavit showed any
such state of facts. It did show that the affiant, who was away
from New York at the time the inadvertence probably happened,
believed that the papers had been put back in the files so as to be
properly placed upon the docket so that the motion to amend could

be made. It does show that through error the protest was submitted, but it does not say through whose error nor how the error was made, whether under inexcusable or excusable circumstances. It does not show that some other member of the firm of able lawyers representing the appellants might not have intentionally brought about the submission. It is not sufficient for one member of a firm to say "I did not know," when the other members of the firm all might have known, and it is not enough for the one member of the firm who ought to have known to cover the whole field by saying that it was submitted through error.

I very reluctantly disagree with the majority opinion because I feel as the majority do that the appellants might have been treated by the court below in such a way as to have brought about a result more in accordance with justice, but I am not willing to hold, under the circumstances, that the trial court abused its discretion.